UNITED STATES, Appellee

v

JOHN J. ROGAN, First Lieutenant, U. S. Army, Appellant

8 USCMA 739, 25 CMR 243

740

No. 10,091

Decided February 28, 1958

*First Lieutenant Gerald G. Barton* argued the cause for Appellant, Accused. With him on the brief were *Colonel James M. Scott* and *First Lieutenant Lawrence R. Fullem.*

*First Lieutenant Richard W. Young* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of stealing a camera from an enlisted man, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, and sentenced him to dismissal and total forfeitures. He brought his case to this Court on three assignments of error.

In his first assignment, the accused contends that evidence of the results of a search by Master Sergeant H. Ontiveros was erroneously admitted in evidence by the law officer. It appears that the accused's organization was on a bivouac problem. Before going on guard duty at 11:00 p.m. on August 21, 1956, Private Heilig placed his camera on top of the radio inside the M-59 "track" used by the organization for the problem. Four hours later he looked for the camera but could not find it. He reported the loss to Sergeant Ontiveros, his noncommissioned officer. In turn, Ontiveros, who was the Intelligence noncommissioned officer, reported the matter to the accused, the S-2 officer for the unit. On receiving the report, the accused merely "shrugged his shoulders." At 10:00 a.m. Ontiveros informed Lieutenant Albert, the Assistant S-2 officer, of the loss because nothing had come of his earlier report to the accused. Lieutenant Albert immediately conducted a search of the area and held a "shakedown" inspection of the equipment of the enlisted personnel, including that of Sergeant Ontiveros. Nothing was found. In the afternoon, Ontiveros discussed the loss

with Sergeant Holly. They were troubled by the fact that the accused carried his gas mask. This "didn't look right" because no one else carried his mask. The Sergeant also noticed that the accused's mask seemed to be "bulging."

During the evening of August 23, the organization completed the bivouac operation and returned to the barracks. Sergeant Ontiveros went to the S–2 office. Only another enlisted man was present. The Sergeant saw Lieutenant Albert's hand bag and the accused's duffle bag in the office. He "checked" them. At this point, defense counsel objected to further testimony by the witness on the ground that his search was illegal. In support of his objection, he cross-examined Ontiveros, and elicited an admission that he believed that he was acting in an "official" capacity in making the search; he had no personal interest in either the victim or the camera. On redirect examination, Ontiveros testified that he considered it his duty to report anything like "this." He also said that after the "shakedown," neither Lieutenant Albert nor anyone else told him "to do anything in connection with" the case.

At an out-of-court hearing on the objection, defense counsel argued that Ontiveros had conducted the search in an "official" capacity under the "authority of the United States." See Manual for Courts-Martial, United States, 1951, paragraph 152. Conversely, trial counsel contended that the Sergeant was simply "curious," and that he had acted in a purely private capacity. To narrow the issue, the law officer obtained a concession from counsel to the effect that Ontiveros did not have direct disciplinary authority over the accused and that he was not a law enforcement agent "in the usual sense." Defense counsel insisted, however, that the Sergeant was

"clothed with apparent authority" to act as an enforcement agent because the incident arose in the field and he continuously engaged in an investigation into the circumstances of the theft. On completion of the argument, the law officer overruled the objection and allowed Ontiveros to testify to the results of his search.[1]

In United States v Volante, 4 USCMA 689, 16 CMR 263, we pointed out that not every search by military personnel is "under the authority of the United States." We noted two classes of persons who are normally regarded as possessed of such power: (1) Law enforcement agents, and (2) persons having direct disciplinary power over the accused. We distinguished these groups from persons who act in a purely private capacity, notwithstanding that they possess the authority of a particular military rank or grade. Evidence obtained as a result of a search conducted by a private person is admissible, whereas that obtained from an illegal search by those acting under the authority of the United States is inadmissible.

From the evidence here, the law officer could properly conclude that Sergeant Ontiveros acted in a private capacity. True, the Sergeant described his action as "official," but the characterization did not bind the law officer. See United States v Friend, 17 CMR 550. The latter can, and must, look to all the circumstances.

An investigation does not change its nature from official to unofficial because it starts in a particular place and extends over a period of time. Sergeant Ontiveros reported the loss but he did not conduct the "shakedown." On the contrary, he was one of the persons

---

[1] The witness testified that he "felt" the accused's duffle bag but detected nothing suspicious. However, he also examined the S–2 desk and in the bottom drawer he found the accused's gas mask. He opened the cover. Through the facepiece of the mask he saw the knob of a camera. He replaced the mask in the desk and notified the officer of the day of his discovery. Later, the camera was recovered from the accused. The Government and the accused are in sharp disagreement on the accused's standing to object to the search of the desk and gas mask, but in view of our disposition of the main issue, we need not consider the point. Cf. United States v Blok, 188 F2d 1019 (CA DC Cir) (1951); United States v Ebeling, 146 F2d 254 (CA2d Cir) (1944).

searched. No one gave him authority to search. He was, however, very suspicious of the accused. He found the accused's bag in the S–2 office. With no one but a fellow noncommissioned officer present he examined it. Under these circumstances, the law officer could reasonably find that he "checked" the bag and searched the desk to satisfy his personal suspicions and not "under the authority of the United States." See United States v Volante, supra.

For his second claim of error, the accused maintains that the law officer erred in denying his motion to suppress a statement made by him to the officer conducting the investigation required by Article 32, Uniform Code of Military Justice, 10 USC § 832. At the core of his argument is an assertion that he was deprived of his right to counsel during the investigation. To support the claim, defense counsel made an offer of proof. In substance, the offer alleges that Major Nelson, the accused's Executive Officer, and Major Barrow, his Commanding Officer, "loved the accused to death." As a result, they called him on August 28, to advise him to have counsel at the Article 32 investigation to protect his legal rights. The accused "wholeheartedly concurred." Later, Major Nelson telephoned the staff judge advocate of the Division to request that Major Quinton be made available to the accused for the investigation. He was informed that the Major was unavailable,[2] and "he might [also] have been told that any request for counsel for the pretrial investigation . . . was premature." According to the offer of proof, Major Nelson misinterpreted the information he received. He telephoned the accused and advised him as follows:

". . . that no counsel from the division could be made available for this Article 32 investigation; that if he desired counsel for this Article 32 investigation he would have to seek his own counsel from HACom or the hinterlands. In other words [defense counsel continued], I believe

that the statement made by Major Nelson to the accused on the telephone very effectively told the accused that if he wanted a lawyer, if he wanted counsel, at the pretrial investigation he would have to go get it himself. Civilian counsel he would have to pay or get somebody else from some other command."

Defense counsel admitted that the Article 32 investigating officer, Major Mitchell, advised the accused of his right to counsel. He contended, however, that it was "hollow" advice because of the earlier information the accused received from Major Nelson. In the language of the offer, the accused "was under the impression that he was not entitled to appointed counsel even though the investigating officer . . . told him he was." The accused, therefore, "proceeded with the investigating without counsel." This circumstance, defense counsel argued, made inadmissible the accused's incriminating statement to the investigating officer.

A deprivation of counsel may make inadmissible a statement obtained from an accused in the course of a pretrial investigation. United States v Tomaszewski, 8 USCMA 266, 24 CMR 76. The offer of proof, however, does not show a denial of counsel.

At the outset, we note that the offer is very vague as to the actual conversation between Major Nelson and the accused. Significant is the absence of any indication that Major Nelson referred to his abortive attempt to obtain the services of Major Quinton. In the context of such a reference, Major Nelson's advice can be construed as a correct statement of the accused's actual legal rights. It merely emphasized that, although the accused had a right to military counsel of his own selection, the right was conditioned upon the reasonable availability of the person desired (Article 32(b), Uniform Code of Military Justice); and since the staff judge advocate of the Division had indicated

---

[2] Major Quinton was later appointed, and acted as, law officer. The record shows, however, that he was in England at the time of Major Nelson's request, and he had no connection with the case until it was referred for trial.

that no one on his staff was then available, the accused would necessarily have to look elsewhere for counsel of his own choice. Nothing in the advice indicates that the accused had no right to appointed military counsel for the pretrial investigation. However, we can pass over this deficiency in the offer and concentrate on its specific recitals.

We start with the fact that the investigation was held three days after the accused acquired the mistaken "impression" that he had no right to appointed counsel. At the beginning of the investigation, the investigating officer informed him, with particularity, of his right to counsel. He told the accused that he could have civilian counsel, if provided by himself, or military counsel of his own selection, if reasonably available, or, finally, counsel appointed by the officer exercising general court-martial jurisdiction over the accused. In view of this advice by the person conducting the investigation, it is difficult to understand how the accused's "impression" could persist. It is not alleged in the offer of proof that the accused lacked either the intelligence or the emotional stability to understand the investigating officer's advice. Cf. United States v Desroe, 6 USCMA 681, 21 CMR 3; United States v Hernandez, 4 USCMA 465, 16 CMR 39. Neither is it alleged that the investigating officer dissipated his advice by other statements or actions. Be that as it may, the law officer could reasonably conclude that the accused's impression was corrected by the specific advice of the investigating officer, and that he fully understood his right to have counsel appointed to represent him at the pretrial investigation. With that issue decided against the accused, there is absolutely nothing in the offer of proof that even hints at a deprivation of counsel. Consequently, the denial of the motion for appropriate relief must be affirmed.

Finally, the accused argues that the law officer erred in denying his motion for a continuance. The argument has a double aspect. First, it is contended that the accused was entitled to a continuance as a matter of law. Second, it is contended that, under the circumstances, it was an abuse of the law officer's discretion to deny the motion.

Under Army regulations, an officer whose conduct subjects him to trial by court-martial for an offense ▮▮▮▮▮ ▮ punishable by dismissal "may tender his resignation . . . in lieu of trial." AR 635–120, paragraph 4a. The resignation is required to be forwarded, through channels, to the Department of the Army for final action. In material part, it provides as follows:

"Commanders will insure that there is no element of coercion in a tender of resignation for the good of the service. The officer concerned will be allowed a reasonable period of time to make a personal decision in cases wherein resignation is contemplated." [Paragraph 4c.]

The accused construes the regulation as absolutely prohibiting trial by court-martial until the resignation is acted upon by the Secretary of the Army. In support of his interpretation he observes that the resignation regulation applicable to enlisted personnel expressly provides that the tender of resignation shall "not . . . be construed as precluding . . . [reference of] a case to trial . . . prior to the acceptance of a resignation," whereas no similar provision appears in the regulation pertaining to officers. He argues that the difference in the regulations shows an intention to bar the trial of an officer until his tender is either accepted or rejected by the Secretary of the Army.

The present officer regulation is framed in substantially the same language as earlier regulations. See AR 605–275, November 9, 1944, and its successors. The earlier regulations were construed as not prohibiting a trial pending decision on the officer's tender. United States v Weller, 10 BR–JC 381, 392; JAGA 1947/6371, July 31, 1947; SPJGJ 1945/3982, April 17, 1945. To avoid the effect of these decisions, it is suggested that since the earlier enlisted resignation regulations were the same as those for officers, the present is evidence of a change in intention. The argument is untenable.

Spelling out intention by direct language in one regulation does not impart a contrary intent to a different but related regulation. The language of the present regulation is virtually the same as its predecessor. The Government contends, and we agree, that the judicial interpretation placed upon the previous regulations should be read into the successor regulation. United States v Brown, 8 USCMA 516, 25 CMR 20. Also in a 1957 amendment to the regulation we find a significant indication that the meaning of the provision is unchanged. Paragraph 3 provides for resignation in lieu of elimination under other provisions of law. The original paragraph contained language identical to that of paragraph 4c, except for a difference in the reason for resignation. Paragraph 3 was amended in February 1957. The amendment, among other things, specifically provides that the tender of a resignation in lieu of elimination "will automatically suspend elimination action." In our opinion, the change is a clear recognition that the previous provision did not prohibit continuance of the proceedings pending decision by the Secretary of the Army. See United States v Robinson, 6 USCMA 347, 20 CMR 63. We conclude, therefore, that the regulation does not, as a matter of law, prohibit the trial of the accused.

We turn then to the discretionary aspect of the motion. The grant or denial of a continuance rests in the sound discretion of the law officer. The reason presented to him here was appropriate and the law officer could,

in the interest of justice, have granted a reasonable continuance. United States v Knudson, 4 USCMA 587, 16 CMR 161. The question, however, is not what the law officer could have done, but whether he abused his discretion in what he did.

Forty-six days had elapsed between the tender of the accused's resignation and the day of trial. The regulation requires commanders in the chain of command to note their recommendations for approval or disapproval (ibid, paragraph 9), but defense counsel did not indicate what action had been taken by them. Moreover, he could not say whether the tender had reached the Secretary of the Army, although he insisted that action on the tender would be "forthcoming very shortly." Also, counsel maintained that he was not asking for "an extended continuance," but he did not say what action he proposed to take to expedite consideration of the tender. Under these circumstances, we are unable to conclude that the law officer abused his discretion in denying a continuance. United States v Frye, 8 USCMA 137, 23 CMR 361; United States v Nichols, 2 USCMA 27, 6 CMR 27.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

Judge FERGUSON concurs in the result.