UNITED STATES, Appellant

v

JOHN C. MASSEY, Staff Sergeant,
U. S. Air Force, Appellee

14 USCMA 486, 34 CMR 266

No. 17,319

April 3, 1964

▮▮▮▮▮▮▮▮▮▮▮▮

*Major Thomas J. Connolly* argued the cause for Appellant, United States. With him on the brief was *Colonel Emanuel Lewis.*

*Major Milton E. Kosa* argued the cause for Appellee, Accused. With him on the brief were *George W. Latimer, Esquire, Colonel Daniel E. Henderson, Jr.,* and *Major William A. Crawford, Jr.*

## Opinion of the Court

QUINN, Chief Judge:

Among other offenses, the accused was charged with three specifications of carnal knowledge of his then six-year-old daughter, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. He was convicted of the lesser offense of taking indecent liberties with a minor. The court-martial imposed a sentence which included a dishonorable discharge and confinement at hard labor for six years. The findings of guilty and the sentence were approved by the convening authority, but reversed by a board of review on the ground the accused was prejudiced by denial of an application to continue the trial until requested military counsel could return from emergency leave. Pursuant to Article 67(b) (2) of the Uniform Code of Military Justice, 10 USC § 867, The Judge Advocate General of the Air Force asked this Court to review the correctness of the board of review's determination.

The accused was confined at Stead Air Force Base Detention Center on February 21, 1963. Five days later, an investigation was begun under the provisions of Article 32 of the Uniform Code, 10 USC § 832. The accused was represented by Captain Herbert J. Santos, a qualified military lawyer, specifically requested by him. From time to time the investigation was recessed for various reasons, including compliance with a request by the Investigating Officer for psychiatric examination of the accused. It was terminated on April 19, with a recommendation for trial by general court-martial. On May 6, with some modifications recommended by the staff judge advocate, the charges were formally referred for trial to a general court-martial. Captain Santos was the appointed defense counsel and First Lieutenant Eldon D. Roberts was the appointed assistant defense counsel.

By letter dated May 13, Harry A. Busscher, Esquire, an attorney with offices in nearby Reno, Nevada, advised Stead Air Force Base he had been retained as counsel to represent the accused "in his General Court-Martial trial which is scheduled for the near future." He maintained his court calendar was "completely filled" until July 11; and he requested postponement of the accused's case to the period of July 11 through July 19, when his calendar would "be clear." The request was forwarded to the convening authority at Mather Air Force Base, California. On May 21, the convening authority denied the request for so long a delay for several reasons, including the fact that two "probable essential government witnesses" would be discharged from the Air Force and "away from the area of trial at the time" requested. However, he approved a postponement to the week of June 17, 1963. At the same time, he indicated that if it was agreeable to counsel the court-martial could be held on Saturday. Mr. Busscher wrote the convening authority on May 23 acknowledging receipt of his ruling. He said that one of his jury trials, scheduled for the week of June 17, had been cancelled and he would "be able to proceed with the [accused's] trial . . . at that time."

Between the time he was retained as civilian counsel and June 8, Mr. Busscher had "at least eight lengthy telephonic conferences" with Captain Santos about the case. They also had "one fairly lengthy conference" in person at Stead Air Force Base. Lieutenant Roberts, the appointed assistant defense counsel, did not participate in these conferences and knew little about the case.

On Friday, June 7, a new general court-marital was constituted by the convening authority. All unarraigned

cases before the court-martial to which the accused's case had been referred were transferred to it. Lieutenant Roberts was designated defense counsel for this court-martial. Captain Santos telephoned Lieutenant Roberts on Saturday and told him of the substitution. The change was apparently considered necessary to solve a problem confronting Captain Santos. His father was seriously ill, and the Captain requested emergency leave. According to Mr. Busscher, "a bit of a sword of Damocles hung over the request." He explained this statement as follows:

". . . At that time he contacted me and I said that naturally I would agree to proceed with the trial. Pardon me. *At that time I stated that I would not keep Captain Santos from going on his emergency leave. However, the continuance of the trial would be over my objection, and I intended to renew my request for a continuance at the time of the trial.* Captain Santos was then granted his emergency leave, and he is still on it, and Lieutenant Roberts was assigned as military counsel." [Emphasis supplied.]

"[A] few days subsequent to 11 June" there was submitted to trial counsel a very brief request, dated June 11 and personally signed by the accused, for a delay in trial to June 24 "in order that requested military defense counsel, Captain Herbert J. Santos, . . . presently on emergency leave, may be present for trial." By telegram, the convening authority denied the request "at this time" because it did not give "specific reasons for [the] necessity" of Captain Santos' presence. About this time, Mr. Bus-

scher apparently had three other civil cases go off his personal trial calendar, and he was "available" to try the accused's case during "the entire week of the 24th." However, no effort was made to renew the application with a statement of the reasons the accused considered the presence of Captain Santos necessary for his defense.

Several days before the trial, two children involved in the case as witnesses for the Government were brought to Stead Air Force Base from Duluth, Minnesota, "so that both the trial counsel and the defense counsel would have time to interview" them. The record indicates the witnesses were in fact questioned by Mr. Busscher three days before trial. In addition, two "probable" Government witnesses were scheduled for separation from the Air Force. One of them, Captain John L. Green, a medical doctor, was due to depart Stead Air Force Base on the night of June 17; the other was to leave before the 24th.[1]

On the argument of the motion, Mr. Busscher represented he had worked with Lieutenant Roberts "in the past" and had the "highest regard" for him, but he did not believe the Lieutenant had a "proper opportunity to prepare." Yet, he admitted he had had "contact" with Lieutenant Roberts at least a week before trial. The record shows that on June 12, Lieutenant Roberts transmitted to trial counsel a synopsis of the expected testimony of Airman Campbell in support of a previous request by Captain Santos that Campbell be summoned as a defense witness. The recitals in the synopsis indicate substantial familiarity with the probable defense. More importantly, while Lieutenant

[1] The board of review concluded that this second witness was Airman Second Class David S. Campbell, who was called as a rebuttal witness by the prosecution. Campbell had been requested by the defense. The record shows affirmatively he was not the other Government witness who was to be discharged. When Mr. Busscher requested a delay in his cross-examination of Campbell, he indicated that Lieutenant Roberts was going to talk to another witness at noon; this witness was "a man who is leaving the service." Obviously, Camp-

bell was not this other witness. Also, as early as May 21, it was anticipated that two government witness would be discharged from the Air Force before June 24. Trial counsel did not know Campbell was to be a witness until the defense requested him on June 6. It seems more likely that this other witness was Dr. Barry P. Norton, who, with Dr. Green, examined the accused's daughter. But whoever the "probable" witness was, the undisputed fact is that he was expected to be discharged and away from the area by June 24.

Roberts said he had done practically nothing as assistant defense counsel, he did not say or imply that he did nothing after his appointment as defense counsel, or that on the day of trial he was inadequately prepared to assist in the accused's defense. Also, at no point in his lengthy argument, did Mr. Busscher indicate, or intimate, that he and associate civilian counsel, Mr. William Raymond, were not prepared to go to trial. Nor did he contend that he needed or desired any information about the law or facts of the case that were possessed by Captain Santos. He asked that the case be continued until after Captain Santos' return to duty only because it was "highly unfair" to compel the accused to go to trial without his specifically requested military counsel.[2]

At the end of counsel's argument, which reviewed the facts recited above and referred to the opinion of this Court in United States v Tellier, 13 USCMA 323, 32 CMR 323, the law officer denied the motion. He ruled that since the accused had "military counsel, for ten days, and . . . the services of his civilian attorneys for some period of time," he could not "see how the accused could be . . . preju-

diced" by being required to go to trial as scheduled without Captain Santos.

The grant or denial of a continuance rests in the sound discretion of the law officer. United States v Rogan, 8 USCMA 739, 745, 25 CMR 243. That discretion is subject to review. United States v Plummer, 1 USCMA 373, 3 CMR 107; United States v Potter, 14 USCMA 118, 33 CMR 330. On review, the crucial question is not whether the appellate authority, or another law officer, might have ruled differently, but whether in light of all the circumstances the ruling made was so unfair as to constitute an abuse of discretion resulting in prejudice to the accused. United States v Potter, supra. In reaching its conclusion that the law officer abused his discretion in this case, the board of review gave substantial weight to the decision in United States v Tellier, supra. A comparison of the salient facts in *Tellier* and in this case indicates that *Tellier* is not at all determinative of the issue, in that the accused was not deprived of his right to have appointed military counsel assist his civilian counsel.

| *Tellier* | *Massey* |
|---|---|
| 1. A new appointed defense counsel was substituted for Major John E. Kennedy, the accused's appointed counsel, on the evening before trial. | 1. Lieutenant Roberts was substituted for Captain Santos ten days before trial. |
| 2. The substitution was effected for the convenience of the Government. | 2. The substitution was effected at the personal request, and for the benefit, of Captain Santos. |
| 3. Civilian counsel was not informed of the substitution before it was made, and he objected to it at the first opportunity after it was made. | 3. Civilian counsel was consulted by Captain Santos before the substitution and he agreed to it. In fact, since his own trial calendar at that time left him free only for the week of June 17, he said "the continuance of the trial [as a result of Captain Santos' emergency leave] would be over . . . [his] objection." |

---

[2] Mr. Busscher did not specify any date for Captain Santos' return. However, it may be inferred from the June 11 request that the trial be postponed to "approximately" June 24, that the Captain was expected to return by the latter date. On the argument of this appeal we were informed that Captain Santos, in fact, returned to Stead Air Force Base on June 21.

4. Civilian counsel represented he had had no opportunity whatsoever to consult with Major Kennedy, and he had been unable to read his own file on the case before trial because it had been " 'resting on Major Kennedy's desk.' " [*Id.,* at page 325.]

5. Civilian counsel had depended upon military counsel for assistance in determining the composition of the court-martial and in the challenge proceedings. However, the new appointed defense counsel was not prepared to participate in the case and had to be excused.

6. As a result, the accused was deprived of his right to have an appointed military counsel assist his civilian counsel at trial.

4. Civilian counsel did not allege or imply he was not prepared to try the case. He admitted he had eight telephone conferences with Captain Santos, and one lengthy conference with him in person. Similarly, Lieutenant Roberts did not allege that he was unprepared to assist civilian counsel.

5. Civilian counsel did not indicate he needed Captain Santos for any special reason. While Captain Santos had represented the accused at the Article 32 investigation, civilian counsel had personally interviewed the principal Government witnesses several days before trial. He also personally conducted the challenge *voir dire* of the court members, even before he moved for the continuance.

6. Civilian counsel had consulted with, and had the active assistance of, Lieutenant Roberts for at least a week. In addition, Lieutenant Roberts was retained as associate counsel and actively participated in the case.

As the board of review marshalled the facts, it made out a case showing that a continuance would not have been inappropriate. For example, it concluded there "would have been no inconvenience to the witnesses from Duluth, Minnesota, had a continuance been granted."[3] However, the question is "not what the law officer could have done, but whether he abused his discretion in what he did." United States v Rogan, supra, at page 745; United States v James, 14 USCMA 247, 34 CMR 27. With due respect to the opinion of the board of review, we are constrained to conclude it scrutinized the law officer's ruling within too narrow a focus.

The accused had been represented for at least a week by an appointed defense counsel, who, before trial, had consulted with accused's civilian counsel and actively participated in preparation of the case; the accused's civilian counsel had been in the case for more than six weeks, and had conferred on numerous occasions, in depth, with the previously appointed counsel; neither civilian counsel nor appointed military counsel indicated that he was not prepared to try the case on the scheduled day, or that Captain Santos had knowledge or information about the merits or procedure which he did not possess. At the same time, the Government had made known to the defense, as early as May 21, that some of its witnesses were scheduled for separation from the service. In our opinion, on the facts presented to him, the law officer did not abuse his discretion in denying the motion for a continuance.

The certified question is answered in the negative. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force for

---

[3] The matter of inconvenience to Government witnesses was not adequately developed at trial. Considering the age of the witnesses, and the probability that school might be in summer recess, the board of review's conclusion was not unjustified.

resubmission to the board of review for further proceedings consistent with this opinion.

KILDAY, Judge (concurring):

I concur.

I join in the opinion of the Chief Judge, and his negative answer to the certified question.

As the record shows, Mr. Busscher, as individual civilian defense counsel, had already been in the case for over a month, at the time of trial. He had actively participated in the preparation of the defense. Also appearing for accused was a second civilian lawyer named Raymond. Lieutenant Roberts, who was appointed as accused's military defense counsel upon Captain Santos' departure, on June 7, 1963, had already been in the case in the capacity of assistant military counsel for over a month at that time. But regardless of whether that relationship is significant, Roberts had primary responsibility for the ten-day period until trial commenced on June 17th. It is also to be noted that the June 17th trial date was itself fixed as the result of a defense request for even a longer postponement. And the defense was put on notice at the time of this early request that delay beyond June 17th would be complicated by separation of prospective witnesses and other factors.

Captain Santos, of course, was not present at trial, being away on emergency leave. With regard to his subsequent availability, it would appear that the defense was hopeful he would return shortly but, as I read the record, there could be no assurance of that fact with his father *in extremis*, and surely the law officer could not at that time have known Santos would be back two days after this three-day trial was completed, as we were informally apprised in oral argument.

I do not understand this Court to be in disagreement over the applicable law in this instance. Manifestly, individual civilian defense counsel's motion for a continuance until Santos might return is one within the sound discretion of those ruling on the same; in this instance, ultimately the law officer. And the full circumstances germane to the situation are spread on the record for our consideration. In view of the items outlined above, and for the reasons set forth by the Chief Judge, I cannot say that the law officer abused his discretion in denying the request for a continuance. As we said in United States v Tellier, 13 USCMA 323, 328, 32 CMR 323:

"... as we view this record, the convening authority originally had two possible courses of action open to him. When it first came to his attention that Major Kennedy was otherwise employed, he might appropriately have relieved him for good cause and appointed new counsel to represent the accused in association with individual counsel. Cf. United States v Boysen, 11 USCMA 331, 29 CMR 147; United States v Greenwell, 12 USCMA 560, 31 CMR 146. He might also have determined to retain Kennedy in the case and granted the delay requested on April 4 until his return. His failure to follow either route until Muraoka's appointment the evening before trial, compounded as it was by the law officer's subsequent refusal to grant any delay in the case, effectively deprived the accused of the services of appointed counsel both in the pretrial and trial phases of the case."

Neither do I find, under the circumstances of the instant case, any abuse of discretion as to, or improper limitation of, accused's right to "military counsel of his own selection, if reasonably available" under Article 38(b), Uniform Code of Military Justice, 10 USC § 838. Cf. United States v Cutting, 14 USCMA 347, 34 CMR 127; United States v Vanderpool, 4 USCMA 561, 565, 566, 16 CMR 135.

Accordingly, I join in reversing the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

With all respect, I must disagree with the overturning by my brothers of the well-considered decision of the board of review and consequent approval of the denial to the accused of the services

of Captain Santos. The question before us is not basically one of the law officer's discretion in denying a continuance but one of entitlement to counsel. The request for delay was merely the device by which Santos' reappointment and presence was to be gained. Our disposition of the case should, therefore be governed by principles applicable to representation by military counsel rather than by those governing ordinary requests for continuance.

In order to place the issue in proper perspective, I think it also necessary to recapitulate the evidence surrounding the accused's desire to be represented by the missing lawyer.

Charges were preferred against the accused at Stead Air Force Base, Nevada, on February 23, 1963, and referred to Captain Robert A. Babcock for investigation on the same day. Sergeant Massey requested Captain Herbert J. Santos as his individually selected legal representative. Captain Santos was declared available and undertook Massey's defense. Full hearings were held, and Santos participated therein. A psychiatric evaluation of the accused was obtained. Certain recommendations of the investigating officer led to preference of an additional charge and its investigation. Santos again represented the accused. The investigation was finally terminated on April 19, 1963, and forwarded to the officer exercising summary court-martial jurisdiction. That officer in turn forwarded it to the general court-martial convening authority, recommending trial by the highest military tribunal. On May 6, 1963, the charges were duly referred to trial by general court-martial. Captain Santos was appointed defense counsel and Lieutenant Eldon D. Roberts was named assistant defense counsel.

On May 13, 1963, Mr. Harry A. Busscher advised the staff judge advocate he had been retained by the accused as individual civilian counsel. As noted by the principal opinion, a trial date of June 17, was agreed upon by the Government and Mr. Busscher, after some correspondence over conflicts with his civil calendar.

On or about June 7, 1963, Captain Santos asked for emergency leave because of the serious illness of his father. At that time, a continuance was requested until his return from emergency leave. It was refused.

Mr. Busscher was contacted by Santos and his grant of emergency leave was allegedly conditioned upon Busscher's agreement that the trial would be conducted upon the scheduled date. Busscher stated he "would not keep Captain Santos from going on his emergency leave." However, he declared, "the continuance of the trial would be over my objection, and I intended to renew my request for a continuance at the time of the trial."

The emergency leave was nevertheless granted. Captain Santos was formally relieved as trial defense counsel, and Lieutenant Roberts was appointed in his place. On June 11, 1963, the accused addressed a personal appeal to the convening authority, through the trial counsel, for the services of Captain Santos, and a delay of the trial until approximately June 24, 1963, in order that Santos might be present. On June 13, 1963, the convening authority denied the accused's request on the ground that no reason for Santos' presence was set forth.

The court-martial accordingly convened on June 17, 1963. Upon the completion of arraignment and prior to entry of the pleas, Mr. Busscher renewed the request for a continuance of the proceedings until approximately June 24, 1963. He made known the foregoing matters, pointed out that Captain Santos had "worked at great length on this case, participated in the . . . 32 investigation," and that they had "had numerous conferences in connection with this case." While he had the highest regard for Lieutenant Roberts, Attorney Busscher went on to point out that "Roberts has not had a proper opportunity to investigate this matter" and needed more than a week in which to prepare. Santos had "participated" in the pretrial investigation and had "prepared all the military law on the particular case." Counsel submitted that the case should be continued.

492

In opposition, the trial counsel pointed out that Mr. Busscher, and a civilian associate, "had since the 13th of May, 1963 to prepare this case." He alleged that two probable Government witnesses "will be discharged from the Air Force—in fact, one is leaving tonight" and two civilian witnesses were in attendance from Duluth, Minnesota. All this would, because of the continuance, result "in additional time delays and expense to the Government."

Based on these matters, the law officer denied the motion for continuance, and the trial proceeded to its ultimate verdict and sentence.

In United States v Tellier, 13 USCMA 323, 32 CMR 323, this Court ordered a rehearing when it appeared that the convening authority relieved appointed counsel on the eve of trial and replaced him with a new attorney and accused was also represented by civilian counsel. We there held, over the Chief Judge's dissent, that under Uniform Code of Military Justice, Article 38, 10 USC § 838, "an accused is entitled as a matter of right to the association of his appointed defense counsel with his individually employed attorneys." United States v Tellier, supra, at page 327. We found that right denied the accused when it appeared that appointed counsel had been kept absent from the command on extended temporary duty, thereby preventing any consultation between him and accused's civilian representatives. Moreover, we pointed out, as the Government conceded, that no effort was made to furnish accused with the service of *any* appointed representatives until the last possible minute. We went on to say, at page 328:

"In short, as we review this record, the convening authority originally had two possible courses of action open to him. When it first came to his attention that Major Kennedy was otherwise employed, he might appropriately have relieved him for good cause and appointed new counsel to represent the accused in association with individual counsel. Cf. United States v Boysen, 11 USCMA 331, 29 CMR 147; United States v Greenwell, 12 USCMA 560, 31 CMR 146. He might also have

determined to retain Kennedy in the case and granted the delay requested on April 4 until his return. *His failure to follow either route until Muraoka's appointment the evening before trial, compounded as it was by the law officer's subsequent refusal to grant any delay in the case, effectively deprived the accused of the services of appointed counsel both in the pretrial and trial phases of the case.*" [Emphasis supplied.]

The Government here urges the action of the law officer and the convening authority in denying the brief delay requested is supported by our decision in *Tellier*, supra, emphasizing that, in this case, the convening authority took our suggested course of action, *i.e.*, as the trial drew near, "he . . . appropriately . . . relieved him for good cause and appointed new counsel." *Tellier*, supra, at page 328. But the Government overlooks the fundamental distinction between the *Tellier* case and the record now before us. There, the defense counsel had merely been formally appointed, had had no contact with the accused, and, indeed, had not been accepted by him as his attorney. United States v Miller, 7 USCMA 23, 21 CMR 149; United States v Brady, 8 USCMA 456, 24 CMR 266. In essence, what the convening authority did was effectively to deny Tellier any right to appointed counsel at all by naming an individual who was continuously absent from the command and replacing him with a new officer the evening before the court-martial convened. Thus, it was entirely proper for us to emphasize that he might have relieved the absent counsel and replaced him in sufficient time to allow for the pretrial consultation and trial work in association with civilian counsel.

Here, however, we deal with the much more serious situation of *individually requested counsel* who only incidentally became the appointed defense counsel. Captain Santos was made available to the accused at the outset of the pretrial investigation. The attorney-client relationship was immediately formed, and Santos participated actively and extensively in every phase of the pretrial proceedings until they culminated in the

final reference of the charges to trial on May 6. Thereafter, when Mr. Busscher entered the case, he continued to play an active role, engaging in frequent, lengthy conferences with civilian counsel and, in Busscher's words, preparing all the military law in the case. His relief came only when personal tragedy struck and it appeared that a necessary emergency leave would cause a week's delay in the proceedings.[1] In short, what we deal with here is an individually requested attorney who, under Code, supra, Article 38, had been determined to be reasonably available for all proceedings in connection with the case but who became temporarily unavailable due to unavoidable circumstances. This does not mean that he might be categorically removed from the case and replaced with a new officer, for whose services the accused had not indicated the slightest desire and who had not participated at all in the preliminary proceedings.

In United States v Potter, 14 USCMA 118, 33 CMR 330, we overturned accused's conviction under almost identical circumstances. There, accused's trial commenced on November 30th. The president refused a continuance until December 5th for the purpose of securing civilian counsel. We declared, at page 118:

"The right of an accused to counsel of his choice has been adequately established by Article 38(b), Uniform Code of Military Justice, 10 USC § 838. In addition, the Supreme Court in Powell v Alabama, 287 US 45, 77 L ed 158, 53 S Ct 55, 84 ALR 527 (1932), added that 'the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.' See also Glasser v United States, 315 US 60, 86 L ed 680, 62 S Ct 457 (1942); United States v Evans, 1 USCMA 541, 4 CMR 133; United States v Tellier, 13 USCMA 323, 32 CMR 323.

• • • • •

". . . Clearly the accused was forced to proceed without benefit of civilian counsel of his choice."

And, in United States v Cutting, 14 USCMA 347, 34 CMR 127, we more recently and extensively reviewed the responsibility of a command to furnish an accused with the services of individually requested counsel. There, we stated, at page 351:

"The question is one requiring the exercise of the convening authority's discretion in light of all the circumstances, including the duties assigned the requested officer, military exigencies, and similar considerations—in short, 'a balance between the conflicting demands upon the service,' Henry v Hodges, supra, at page 403, or, to paraphrase the statute involved, a sound reason for denying to the accused the services of the representative whom he seeks." [Emphasis supplied.]

It is these principles rather than those expressed in United States v Tellier, supra, which should govern here. There must be shown on the record "a sound reason for denying to the accused the services of" Captain Santos, for otherwise Code, supra, Article 38(b), will be reduced to a hollow mockery. The availability of individual counsel may be easily circumscribed by appointing him on orders and applying the more liberal rule laid down in Tellier, supra. That, of course, is not what Congress intended, nor does it form a part of the liberal approach which we espoused in United States v Cutting, supra. Rather, as I understand the law, it is still essential to show the reasonable unavailability of the requested legal representative.

Turning to the facts before us, there can be no doubt that the convening authority's denial of the brief delay in order to have Santos available and the law officer's similar action at trial was without adequate foundation. The convening authority's refusal to grant the

---

[1] Indeed, as the Chief Judge notes, Captain Santos actually returned to duty on June 21, 1963. As the continuance requested delay only until June 24, 1963, it is obvious that all parties contemplated such an early ending to his absence.

continuance was expressly predicated on the failure to assign "specific reasons for necessity of presence of Captain Herbert J. Santos." Yet, as we noted in *Cutting*, supra, the burden was upon the commander to demonstrate a reason for failing to arrange for Santos' availability.

The law officer apparently sailed on the same tack. He refused the week's delay simply because accused was represented by individual civilian counsel and an appointed officer. Thus, he saw no prejudice in Santos' absence. Cf. dissenting opinion, Chief Judge Quinn, United States v Tellier, supra. This cavalier attitude toward the accused's right to counsel under Code, supra, Article 38, hardly accords with our pronouncements set out above, nor does it find any real foundation in fancied inconvenience to the Government which then had its witnesses present and ready to testify.

As to the latter circumstance, I point out that, had the convening authority paid proper attention to Sergeant Massey's pretrial request of June 11, 1963, the witnesses may well have been spared their long trek and the Government the inconvenience and expense to which it was put. Moreover, arrangements could undoubtedly have been made either to retain the witnesses expecting discharge under proper subpoenas or else to perpetuate their testimony in the manner prescribed by the Code. In any event, these considerations hardly justify the denial of the accused of his statutory right to have reasonably available individual counsel present at his trial. United States v Potter, supra; United States v Cutting, supra. In short, I am unable to find any reasonable basis here for denying Sergeant Massey the week's delay which

would have seen Captain Santos' return and resumption of the duties at which he had labored so long.

Examining the rationale of the principal opinion, I point out once more that it ignores the basic issue of availability of individual counsel and treats the question as one of denial of an ordinary continuance. I suggest the matter cuts far deeper into the fabric of the Code and that the availability of counsel is not to be judged by the same discretionary standards as the usual request for delay. It is too delicate, too important, to fall within that class of rulings which the Supreme Court has said are seldom, if ever, disturbed on appeal. Isaacs v United States, 159 US 487, 40 L ed 229, 16 S Ct 51 (1895). I would accordingly apply the principles which we have heretofore laid down in United States v Potter and United States v Cutting, both supra, in order to give real meaning and effect to the Code's provisions concerning an accused's right to individual counsel.

In sum, then, I believe we today make a dangerous departure from precedent by applying the general law of continuances to one involving the absence of individually requested counsel. I also suggest that no real judge would, when an individual counsel's father unexpectedly becomes seriously ill, refuse a delay of one week in order that the accused might be afforded his right to proper representation. Cf. United States v Potter, supra. Trials must go on, but they should proceed promptly in the calm spirit of regulated justice, not with the haste of the mob. Powell v Alabama, 287 US 45, 59, 77 L ed 158, 53 S Ct 55 (1932).

I would affirm the decision of the board of review.