UNITED STATES

v.

Staff Sergeant Cecil HENRY, FR 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 322d Transportation Squadron United States Air Forces in Europe.

ACM S24198.

U. S. Air Force Court of Military Review.

8 Sept. 1975.

---

Appellate counsel for the Accused: Colonel William E. Cordingly, Colonel Jerry E. Conner, Major Byron D. Baur, and Major Issac D. Benkin.

Appellate Counsel for the United States: Colonel C. F. Bennett.

## DECISION

ORSER, Judge:

Tried by a special court-martial consisting of a military judge *with members*, the accused was convicted, despite pleas to the contrary, of a single offense of wrongful sale of heroin, in violation of Article 134, 10 U.S.C. § 934, Uniform Code of Military Justice. The approved sentence provides for a bad conduct discharge, forfeiture of $50.00 per month for four months, confinement at hard labor for four months and reduction to the grade of airman basic.

On this appeal, appellate defense counsel have asserted and argued four errors. Having considered them, we find that two are either without merit or were thoroughly considered and correctly resolved adversely to the accused in the review of the staff judge advocate. Further discussion herein is accordingly deemed unnecessary.

Addressing the errors remaining, the first we consider alleges:

THE REFUSAL TO GIVE DEFENSE COUNSEL ADEQUATE OPPORTUNITY TO INTERVIEW THE GOVERNMENT'S PRIME WITNESS WAS PREJUDICIAL ERROR.

This assertion is grounded on a denial by the military judge of trial defense counsel's motion for a continuance of three day's duration during the trial's initial Article 39(a) session. In support of the motion, counsel alleged that as a result of circumstances beyond his control he had insufficient time to prepare for trial. He ex-plained that the Government's primary witness had not been made available to testify when the charge was investigated under Article 32, *Code*, supra, some five weeks before trial. He had requested the witness be summoned to testify at the investigation, but the request was denied. Instead the investigating officer considered the witness' sworn statement earlier given to agents of the Air Force Office of Special Investigations (OSI). As to this aspect of the matter, the record reveals the witness was at the time sequestered at an undisclosed location over 1,000 miles from the investigation site. This was done in accordance with existing OSI policy because of alleged threats against the life of the individual. The record further discloses that the witness was crucial to the Government's case against the accused. According to his statement and subsequent trial testimony, he was an OSI informant to whom the accused sold a quantity of heroin (the subject of the charge at trial) for the sum of $60.00.

Unsuccessful in his effort to secure the presence of the witness at the investigation, counsel had next requested that the individual's deposition be taken. This request was forwarded by the investigating officer to the convening authority who eventually denied it by means of a letter delivered to counsel the day before trial, but dated three days earlier. At trial, just prior to the application for continuance, defense counsel renewed his request for the deposition before the military judge. The judge properly denied the request inasmuch as the witness was then available to testify.

In further support of the motion, counsel recited that he had received only seven days notice of the date of the accused's trial. At that same time he was also informed, he said, that the trial of another client was to commence at the conclusion of the accused's. Due to the press of other necessary duties and personal matters, he arrived at the trial site (not his home station) only one day before trial. While engaged in trial preparation, he was notified that the previously sequestered Government witness

had been returned to the trial site two days earlier and could be interviewed. Though he had a limited interview with the witness on the eve of trial, he contended he had no opportunity thereafter to discuss the fruits of that session with the accused.

The granting or denial of a motion for continuance is a matter, like many other interlocutory rulings, within the sound discretion of the military judge, whose decision will not be disturbed on appeal absent a clear abuse of that discretion. *United States v. Daniels*, 11 U.S.C.M.A. 52, 28 C.M.R. 276 (1959); *United States v. Davis*, 19 U.S.C.M.A. 217, 41 C.M.R. 217 (1970); *United States v. Johnson*, 20 U.S.C.M.A. 359, 43 C.M.R. 199 (1971); Manual for Courts-Martial, 1969 (Rev), paragraphs 58*b* and *d*. In evaluating the exercise of that discretion in the case at hand, we first must examine the substance of the motion itself, for in moving for a continuance the accused has the burden of providing justification for the requested trial delay. *United States v. Parrish*, 7 U.S.C.M.A. 337, 22 C.M.R. 127 (1956). This burden is particularly relevant in a case that has already begun when the application is made in light of the sound policy that trials in progress should not be interrupted. *United States v. Parrish*, supra, at 137. The boundary line of this policy is that justice will nevertheless abide just such an interruption, in fact insist upon it, if the accused provides a sufficient indication that the trial's continuation will result in prejudice to his substantial rights. *United States v. Parrish*, supra; *United States v. Daniels*, supra; *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964).

When the matters presented in support of the application constitute reasonable grounds for the request, the continuance should, as a normal rule, be granted. *United States v. Nichols*, 2 U.S.C.M.A. 27, 6 C.M.R. 27 (1952); *United States v. James*, 14 U.S.C.M.A. 247, 34 C.M.R. 27 (1963). In deciding whether reasonable grounds have been provided, the trial judge is expected to assess the merits in a liberal manner, especially in cases where severe punishment may be adjudged. *United States v. James*, supra. In reviewing the propriety of a trial judge's denial of such an application, however, appellate courts understandably employ a more narrow standard of measurement. The trial judge's discretionary ruling denying a motion for continuance will not be set aside merely on an appellate determination that the accused's request was a reasonable one that should have been granted. Our examination looks beyond that consideration, for

> [O]n review, the crucial question is not whether the appellate authority, or another [military judge], might have ruled differently, but whether in light of all the circumstances the ruling made was so unfair as to constitute an abuse of discretion resulting in prejudice to the accused. *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 at 269 (1964), citing *United States v. Potter*, 14 U.S.C.M.A. 118, 33 C.M.R. 330 (1963) and *United States v. Rogan*, 8 U.S.C.M.A. 739, 25 C.M.R. 243 (1958).

With these principles in mind, we have carefully considered the matters presented by counsel for the accused and all other pertinent circumstances bearing on the issue. Though in support of the motion other matters were mentioned, clearly the primary basis was the claimed insufficient opportunity to interview the primary Government witness and thereafter consult with the accused. In denying the motion, the military judge implicitly ruled that an adequate opportunity had been provided; however, his ensuing actions demonstrated that he was by no means unwilling to accommodate the defense. In virtually the same breath as his denial of the motion, he informed counsel that following presentation of the Government's case, and before cross-examination of any Government witness, he would provide him an opportunity for private interviews in the presence of the accused plus additional time for any necessary consultation with the accused.*

---

\* In passing, we emphasize that such procedure alone would be inadequate, indeed prejudicially defective, in circumstances where the defense had no prior opportunity to interview a

■ More significantly, the record reflects that at the conclusion of the motion session and the convening of the court with members, and before presentation of any evidence, the military judge adjourned the trial at 1030 hours. It did not reconvene until 0815 the following day, at which time the Government proceeded with its case in chief. In the interim between sessions, the defense counsel had an opportunity to conduct his interviews and in other ways prepare for trial. Certainly there is nothing in counsel's trial performance suggesting a contrary indication. In this connection, we see as particularly significant that following direct examination of the key Government witness, counsel, after only a five-minute recess, conducted a vigorous and searching cross-examination.

Though the matters presented by defense counsel in support of his application quite arguably constituted reasonable grounds for favorable action, we do not find in these circumstances that the military judge's adverse ruling was an abuse of his discretion. *United States v. James; United States v. Rogan*; both supra. Concededly, the crucial Government witness was unavailable for personal interview until a short time before trial. Nonetheless, counsel was knowledgeable of his sworn statement long before trial and as observed, interviewed him the day before trial. And the military judge's post-motion, one-day adjournment provided yet another opportunity for interview, consultation with the accused and other trial preparation. Such action, in effect, provided the defense counsel the time for preparation requested. In consideration of all circumstances, the ruling denying the motion resulted in no prejudice to the substantial rights of the accused, and thus, the assignment is without merit. *United States v. Potter; United States v. James; United States v. Massey*; all supra.

In their remaining assertion of error appellate defense counsel claim:

Government witness. *United States v. Worden*, 17 U.S.C.M.A. 486, 38 C.M.R. 284 (1968); *United States v. Enloe*, 15 U.S.C.M.A.

## THE FAILURE TO TRANSCRIBE THE CONTENTS OF TAPE RECORDINGS USED TO CONVICT THE ACCUSED EITHER IN THE RECORD OR THE POSTTRIAL REVIEW WAS PREJUDICIAL ERROR.

Unlike our resolution of the first error considered, we find merit here necessitating remedial action.

As earlier observed, the case involved an OSI arranged sale of a quantity of heroin by the accused to an airman working as an informant for the investigative agency. The informant's testimony detailing the transaction constituted the essence of the Government's case. In defense, the accused, bolstered by the testimony of another airman, conceded the transaction, but asserted the defenses of agency and entrapment. In rebuttal, Government witnesses testified that during the transaction the informant had a hidden microphone attached to his body and the details were tape recorded. The tape recordings were admitted in evidence and preselected portions played in open court. After the court had initially closed for findings deliberation, the members returned and listened to the tapes a second time, returned to their deliberation, and promptly returned a verdict of guilty. The record of trial includes the referenced tape recordings as exhibits, thus preserving them for review, but contains no transcription of what the court members heard. The record simply notes the exhibits were played for the court.

Ordinarily, the absence of a transcript of tape recordings played for the benefit of a court would not be cause for concern. As we noted in our recent decision of *United States v. Lewis*, 49 C.M.R. 734 (AFCMR 1975), a transcription of a tape recording heard in an open session of a court is not essential to qualify the record as verbatim. Given the customarily garbled and thus confusing nature of this form of evidence, review of the exhibit itself provides a more accurate representation of what was inflict-

256, 35 C.M.R. 228 (1965). This, as our analysis demonstrates, is not such a case.

ed on the ear of the court than would any court reporter's conclusory version of what was said and by whom. Unfortunately, the circumstances we here encounter constitute an exception to the rule.

All told, the tapes contain over two hours of recorded material (some obviously of a material nature; most just as obviously totally irrelevant). However, as observed, only preselected excerpts, consuming only 15 minutes of trial time were played and replayed for the benefit of the court members. And, except for a limited commentary by the informant, the record of trial contains no accompanying index or explanation sufficient to enable this Court to determine to an acceptable degree of certainty the segments listened to by the court members. We note the military judge did instruct the technician who operated the tape recorder in court to reset each tape to the beginning after it was played. Even assuming this was done, however, the record provides no clue as to how much of each tape was played. Furthermore, we cannot determine what side of each of the cassettes containing the tapes was played, or whether at some point in the playing all or any of the cassettes were adjusted so that segments from both sides were heard.

■ Although on the basis of our examination we have calculated that the tapes contain no more than 15 minutes of conversation of any kind involving the informant, the accused and the other witness, the record of trial provides no assurance such segments of tape were heard by the members of the court. Under the circumstances, we must conclude, within the strict standard applicable, that the record of trial presented for appellate review is not verbatim. See *United States v. Weber*, 20 U.S.C.M.A. 82, 42 C.M.R. 274 (1970); *United States v. Boxdale*, 22 U.S.C.M.A. 414, 47 C.M.R. 351 (1973); Manual for Courts-Martial, supra, paragraph 82. Since an adjudged punitive discharge may not be approved in the absence of a verbatim record of trial, the portion of the sentence extending to a bad conduct discharge is illegal and hereby set aside. *United States v. Whitman*, 3 U.S.C.

M.A. 179, 11 C.M.R. 179 (1953); *United States v. Thompson*, 22 U.S.C.M.A. 448, 47 C.M.R. 489 (1973). Though there exists a possibility the reporter may have taken notes which would permit the preparation of a transcript, or in some other manner circumscribe the precise parameters of what the court members heard on the tape recordings, the Government has not suggested that anything of the kind was done. We will infer, therefore, as did the United States Court of Military Appeals in *United States v. Whitman*, supra, that if it were possible to provide a verbatim record, the problem would already have been solved by appropriate correction of the record.

■ Notwithstanding the deficiency discussed and our consequent inability to approve the adjudged punitive discharge, we nonetheless consider the record to be of "sufficient completeness" to permit review as a summarized account of the proceedings. *United States v. Thompson*, supra; see generally, Manual for Courts-Martial, supra, paragraph 83*b*. Having carefully scrutinized the record, and noting that nothing of any conceivable relevance contained on the tape recordings supports in any manner the asserted defenses of agency and entrapment, we are convinced that the accused's guilt is fully supported by the evidence. Accordingly, we may cure the error by reassessing the sentence imposed. See *United States v. Thompson*, supra. Having done so, we find all but the bad conduct discharge appropriate.

For the reasons stated, the findings of guilty and so much of the sentence as provides for confinement at hard labor for four months, forfeiture of $50.00 per month for four months and reduction to the grade of airman basic are

Affirmed.

ROBERTS, Senior Judge, and SANDERS, Judge, concur.