UNITED STATES, Appellee,

v.

Private (E-1) Virgil MARTIN, Jr., SSN 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, United States Army, Appellant.

CM 434785.

U. S. Army Court of Military Review.

28 Feb. 1978.

Captain Buren R. Shields, III, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, and Captain Larry C. Schafer, JAGC.

Captain Richard A. Kirby, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis,

JAGC, and Lieutenant Colonel R. R. Boller, JAGC.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

DeFORD, Judge:

The appellant, pursuant to his pleas, was convicted at a bench trial of breach of restriction, failure to obey the orders of his commanding officer, false imprisonment, uttering checks with intent to defraud and wrongful use of marijuana in violation of Articles 92, 97, 123a and 134, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 892, 897, 923a and 934). He received an approved sentence extending to a dishonorable discharge, confinement at hard labor for 18 months, forfeiture of $200.00 per month for 18 months, and reduction to the grade of Private E–1. Our review of the appellant's case is pursuant to Article 66, UCMJ, (10 U.S.C. § 866).

One of the principal issues in this case is whether the appellant was required to forego his right to trial by jury on sentencing as a prerequisite to negotiating a pretrial agreement. *United States v. Boyd*, 54 C.M.R. 312 (A.C.M.R. 1976); *United States v. Cordova*, 4 M.J. 604 (A.C.M.R. 1977). The similarity of the procedures employed by the processing command in negotiating pretrial agreements in the above cases caused us to require a *DuBay*-type hearing[1] in this case as well as the other pending cases with similar factual backgrounds.

As a consequence of appellant's trial and the *DuBay* hearing ordered by this Court, appellant has raised four assignments of error. We find merit in two of these assignments.

### I

Appellant alleges that he was prejudiced by the admission of a proceeding under Article 15, UCMJ, 10 U.S.C. § 815, into evidence during the sentencing phase of the trial. He further alleges that the punishment had been appealed but no action by the appellate authority had been taken thereon.

We agree with his allegation. The record established that the appellant had been punished under Article 15, *supra*, and had indicated his desire to appeal. No appellate action is shown on the Article 15 form. However, in Item 11 of the form there is annotated the following statement:

> "EM had ample time to submit statements on his behalf. Paperwork submitted on 2 Mar 76, 15 days from date of punishment.
>
> /s/
> Frank J. Gehrki, III, CPT, Armor, CDR"

We are unable to ascertain from the foregoing cryptic statement of appellant's immediate commander whether the appeal was ever submitted to the next higher authority. In any event, the form does not reflect that action was taken on the appeal.

 In the absence of appellant's withdrawal of the appeal, he had a statutory right to have it considered whether or not he attached other matters.[2] Accordingly, the Article 15 action was incomplete on its face and should not have been admitted into evidence.[3]

The foregoing error must be tested for prejudice. The improperly admitted Article 15 punishment was for seven offenses involving breach of restriction and failure to obey orders not to wear civilian clothing. These offenses are similar to some of the offenses of which the accused was found guilty at trial. The severity of these offenses is diminished when compared to the offenses of which the appellant was convicted and the relatively lenient sentence imposed at trial by the military judge.

1. *Cf. United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

2. Article 15(c), UCMJ.

3. *United States v. Morales*, 49 C.M.R. 458 (A.C. M.R. 1974), *aff'd*, 23 U.S.C.M.A. 508, 50 C.M.R. 647, 1 M.J. 87 (1975).

Nevertheless, we will exercise an abundance of caution and reassess the appellant's sentence.

## II

Appellant also alleges that his attorney-client relationship with his appellate defense counsel was terminated for administrative convenience.

The factual background upon which this alleged error is based rests in this Court's order for a limited factual hearing.

At the outset of appellate review, this Court determined that it could not resolve the issue of the providency of the appellant's plea of guilty based on the record before us. Accordingly, on 21 March 1977 a limited hearing designed to supply the factual basis upon which the providency issue could be decided was ordered.

The appellant viewed this order for a supplementary hearing as a continuation of appellate review. His appointed appellate defense counsel requested temporary duty and travel authorization to appear in behalf of the appellant at the supplementary hearing. This request was denied. The hearing was subsequently held at Fort Leavenworth, Kansas, and the appellant and others involved received appointed counsel at that command. At the hearing, appellant moved the trial court to require his appellate defense counsel to represent his interests. His request was denied.

At the outset, we must examine the nature of the appellate function in light of the military concept of appellant's right to counsel. Before the civil courts in the United States, an attorney will normally represent a client through successive levels of appeal. In the military practice, because of the dispersal of forces, the trial and appellate activities are separate insofar as detailed counsel are concerned.

Article 70, UCMJ, provides in part, with regard to appellate counsel, that The Judge Advocate General shall detail one or more commissioned officers as appellate defense counsel who are qualified under Article 27(b)(1) and that they shall represent the accused before the Court of Military Review or the Court of Military Appeals (1) when requested to do so by the accused; (2) when the United States is represented by counsel; and (3) when The Judge Advocate General has sent a case to the Court of Military Appeals. The same article provides that military appellate counsel shall also perform such other functions in connection with the review of courts-martial as The Judge Advocate General directs.

In *United States v. Patterson* [4] the legislative history of Article 70 was considered with regard to whether an accused has a right to individual military appellate counsel in the sense that the term is used in Article 38 of the Code. The Court stated:

"In addition to the wording of Article 70(a) of the Code, which refers to the Judge Advocate General's detailing in his office qualified lawyers to function as appellate defense counsel, other sections of the Code substantiate construction of Article 70 to mean that Congress contemplated designation of military appellate defense counsel different from trial counsel. . . ." *Id.* at 161, 46 C.M.R. at 161.

■ The foregoing construction is consistent with the wording of the statute itself.[5] Accordingly, where appointed counsel are concerned, there is no right of an appellant to be represented by trial defense counsel at the appellate level nor right to representation by appellate counsel at the trial level.[6]

---

**4.** 22 U.S.C.M.A. 157, 46 C.M.R. 157 (1973); *see also United States v. Herndon*, No. 430760, 2 M.J. 875 (A.C.M.R. 12 May 1976), *petition granted*, 25 U.S.C.M.A. 158, 54 C.M.R. 176, 2 M.J. 165 (1976).

**5.** A plain and unambiguous statute is to be applied, not interpreted. Where no ambiguity is apparent, there is no reason to resort to rules

of statutory construction, which are intended solely to remove—not create doubt. *United States v. Ware*, 24 U.S.C.M.A. 102, 105, 51 C.M.R. 275, 278, 1 M.J. 282 (1976).

**6.** *See also United States v. Donaldson*, 54 C.M.R. 913, 2 M.J. 605 (N.C.M.R. 1977).

■ Having determined that appointed appellate counsel do not have a *per se* right to represent an accused at a trial function, we must examine the nature of the hearing we ordered in order to determine whether it was a trial or an appellate function. As we have previously noted, the order of this Court contemplated an adversary fact-finding hearing. We did not authorize any discretion on the part of the convening authority selected by The Judge Advocate General to hold that hearing. His function was solely to appoint a hearing judge and provide counsel for this appellant in accordance with Article 38(c) of the Code, effectuate the type of hearing heretofore noted and return the authenticated record of the hearing to this Court.

In *United States v. Flint*[7] the United States Court of Military Appeals clearly distinguished a *DuBay*-type proceeding from a rehearing when they stated: "A *DuBay* proceeding, in effect, is utilized to gather additional evidence or to resolve conflicting evidence *before* determining an issue presented to the appellate tribunal." Accordingly, we believe that a *DuBay* hearing ordered by this Court is not a part of the appellate function as it has no immediate direct connection with the determination of an issue before the appellate Court but is, as had been previously stated by our high Court, a hearing utilized to gather additional evidence in order that an appellate issue may be decided in the future and as such, is an extension of the initial trial proceeding.

Here appellate defense counsel was only appointed to represent the appellant on appellate issues before this Court or possibly before the United States Court of Military Appeals in the future. As such, he was not entitled to represent the appellant at a trial function which was not directly related to the decisional process of an appellate issue. Accordingly, the Government did not sever the appellant's attorney-client relationship with his appellate defense counsel for administrative convenience.

## III

Appellant also alleges that his conviction of false imprisonment was improper under the rationale of *United States v. Johnson*, 3 M.J. 361 (C.M.A. 1977). Government counsel concedes that the offense of which the appellant stands convicted does not come within the scope of Article 97 of the Code as interpreted in *Johnson, supra*. However, they argue that *Johnson* overruled *United States v. Hardy*, 11 U.S.C.M.A. 487, 29 C.M.R. 303 (1960), which interpreted the provisions of Article 97 to include private acts of unlawful detention and that we should not give retroactive effect to *Johnson, supra*.

*Hardy, supra*, was decided in 1960. In that case, Judge Latimer speaking for a divided Court stated that the wording of the article indicates a congressional intent to sweep within the law all persons subject to the Code. Accordingly, any unlawful restraint of another's freedom of locomotion by any service person constituted a violation of the article.

In *Johnson, supra*, the Court, 17 years later, determined that the congressional intent behind Article 97 was to provide limited application which did not apply to the private act of false imprisonment (unlawful detention) by one not acting under a delegation of authority from the Code.

■ Here, the appellant restrained a young woman from departing a vehicle against her will without any pretext of authority. We agree with Government counsel that Article 97 as it is now construed under *Johnson, supra*, would not apply to the appellant's act.

The appellant's case was tried in April, 1976 some 16 months prior to the decision in *Johnson, supra*. However, both cases were pending in the appellate process during a portion of the same period and as we have noted, appellant's conviction was not final.

At common law, there was no authority for the proposition that judicial decisions

---

7. 24 U.S.C.M.A. 270, 51 C.M.R. 722, 1 M.J. 428 (1976).

made law only for the future.[8] Accordingly, the traditional view has been that by overruling a prior decision the Court does not make new law but only vindicate the old law from misrepresentation.[9] The modern view does not subscribe to the vindication theory but rather takes a pragmatic approach that the overruled case was the "law" until it was changed.

Notwithstanding the conflicting views, it is still accepted as a general rule that unless special circumstances warranting the denial of retroactive application exists, the overruling decision is entitled to retroactive as well as prospective application.

In those cases where retroactivity has been limited, such factors as justifiable reliance on decisions which are subsequently overruled, purpose of the new rule and burden on the administration of justice are considered jointly or severally as substantiating the view of partial retroactivity or prospective application.

In *Linkletter v. Walker*[10] the Supreme Court of the United States reviewed the history of the case decisions concerning retroactivity and determined that their decision in *Mapp v. Ohio*[11] was not retrospective in application. That decision appears to endorse the theory that courts in appropriate cases may in the interest of justice, make the rule prospective. Decisions on retroactivity are not of constitutional proportions.[12] The Supreme Court has stated that courts must weigh the merits or de-

merits in each case by looking to the prior history of the rule in question, its purpose and effect and whether retrospective operation will further or retard its operation.[13]

We have enunciated a part of the prior history of Article 97, UCMJ. Data available in the office of the Clerk of Court indicates that only 44 convictions have been affirmed under the rule in *Hardy, supra,* in the intervening years.

Those previous convictions were obtained in good faith based on existing precedent and are "an operative fact which may have consequences which cannot justly be ignored."[14]

In addition, *Johnson, supra,* is a severe limitation of the scope of Article 97 of the Code. There is no question that subordinate jurisdictions have a right to rely upon the previous precedent of the appellate courts. However, that reliance does not mean that every change in the law must be entirely prospective in application.

Here, the appellant's conviction for *unlawful detention was not final on the date Johnson, supra,* became the controlling law. As his conduct is now exempt from the operation of the statute under which he was convicted, justice demands he should be given identical treatment. Accordingly, we hold that *Johnson, supra,* is partially retroactive to these cases pending appellate review as of the date of that decision.[15]

**IV**

Finally, appellant alleges his plea was improvident as it was entered at trial pur-

---

**8.** *See* Note, "Retroactive or merely prospective operation of new rule adopted by courts in overruling precedents—Federal cases." *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 992 (1965). *See also* Notes and Comments, "Prospective Overruling and Retroactive Application in the Federal Courts" 71 Yale Law-Journal 907.

**9.** *See* Annotation, 10 A.L.R.3d 1371.

**10.** *See* footnote 8.

**11.** 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**12.** *Linkletter v. Walker, supra* 381 U.S. at 628, 85 S.Ct. 1731.

**13.** *Linkletter v. Walker, supra.*

**14.** *See Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Linkletter v. Walker, supra.*

**15.** *See United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801); *Carpenter v. Wabash Railroad Company,* 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940); *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934); *Vanderbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941).

suant to a pretrial agreement that was void as against public policy because the appellant was led to believe that in order to maximize his chances of gaining acceptance of his offer, he had to "sweeten the pot" by foregoing his right to be sentenced by members.

■ It has been held that a defendant who enters a plea of guilty simultaneously waives several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the due process clause, it must be an intentional relinquishment or abandonment of a known right or privilege.[16] Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Although a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be said to be voluntary unless the defendant possesses an understanding of the law in relation to facts.[17]

■ Pretrial agreements have been a fertile source of litigation in the past.[18] In Schmeltz, supra, the accused included a provision in a pretrial agreement which provided that the accused would request trial by judge alone if the convening authority accepted certain limitations on sentence. The questioned provision originated solely with the accused and was offered as an inducement to encourage the convening authority to accept the agreement. The United States Court of Military Appeals in affirming the use of the questioned provision as an incentive to negotiate the pretrial agreement, did not decide the issue on a basis of public policy. They stated that plea bargaining agreements should concern themselves only with bargaining on the charges and sentence. The questioned provision did not deal with a constitutional issue or fundamental principle that could affect the accused's guilt or the legality of his sentence. However, the provision did, at the accused's request, force an election of one of two sentencing agencies open to him under the applicable statute. Accordingly, an appellant may bargain away his right to trial by jury on sentencing if he so desires.

In United States v. Cordova, supra, we made factual findings regarding the methods employed by the processing command in negotiating pretrial agreements. Those factual findings are equally applicable here and we incorporate them by reference.

■ The difference in Cordova, supra, and this case rests upon the perceptions of counsel and the desire of the respective appellants. Here, the appellant's individual military counsel did not possess the perception that the appellant was required to bargain away his right to trial by jury in order to negotiate a favorable pretrial agreement. She was well aware that a favorable agreement could be negotiated and the appellant could receive a jury on sentencing if he desired one. Appellant's counsel advised the appellant of his rights in this regard and his manifested desire to have a trial before the military judge sitting alone was freely given after being correctly advised as to his available options. Accordingly, we find appellant's plea was entirely provident in this respect.

■ One final matter remains to be resolved. Our decision on the issue of the partial retrospective application of United States v. Johnson, supra, raises the spectre that appellant's pleas of guilty may be improvident because of a substantial misunderstanding of the maximum punishment. The factors to be considered in an analysis of this character have been previously con-

---

16. United States v. Care, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

17. United States v. Care, supra at 542, 40 C.M.R. at 254.

18. See United States v. Schmeltz, 23 U.S.C. M.A. 377, 50 C.M.R. 83, 1 M.J. 8 (1975), affirmed in part and reversed in part, 24 U.S.C. M.A. 93, 51 C.M.R. 266, 1 M.J. 273 (1976), and the cases cited concerning this subject in United States v. Cordova, 4 M.J. 604 (A.C.M.R. 1977).

sidered by this Court on several occasions and need not be reiterated here.[19] The maximum punishment applied in the appellant's case included 29 years and two months confinement. Unlawful detention carries a maximum confinement of three years. Accordingly, the maximum confinement permissible was reduced to 26 years and two months.

Based upon the appellant's responses to the trial judge during the providency inquiry and the pretrial agreement, we conclude that the appellant's misunderstanding could not have been substantial. We believe the pretrial agreement negotiated by the appellant would not have been changed in any substantial degree even if all parties to the trial had had the clairvoyance to foresee the rationale in *Johnson, supra.* Accordingly, we find appellant's plea entirely provident. However, we will, out of an abundance of caution, reassess the sentence.

The approved finding of guilty of Additional Charge I and its specification are set aside and the charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence based on the foregoing errors and the entire record only so much of the approved sentence as provides for a bad-conduct discharge, confinement at hard labor for 18 months, forfeiture of $200.00 pay per month for 18 months, and reduction to the grade of Private E–1 is affirmed.

Judge DRIBBEN concurs.

19. *See United States v. Walls*, 3 M.J. 882 (A.M. C.R. 1977), *petition granted*, 4 M.J. 196 (C.M.A. 1977).

1. "§ 870 Art. 70. Appellate counsel
 (a) The Judge Advocate General shall detail in his office one or more commissioned officers as appellate Government counsel, and one or more commissioned officers as appellate defense counsel, who are qualified under section 827(b)(1) of this title (article 27(b)(1)).
 * * * * * *
 * * * (c) Appellate defense counsel shall represent the accused before the Court of Military Review or the Court of Military Appeals—

COOK, Senior Judge, dissenting:

Because I believe that the Government severed an attorney-client relationship in this case, without good cause, I cannot join my fellow judges in affirming this case.

I

Appellant was tried by court-martial on 28 April 1976 and sentenced *inter alia,* to a dishonorable discharge and confinement at hard labor for 18 months. On 28 April 1976 appellant requested in writing that, in accordance with the terms of Article 70, Uniform Code of Military Justice, he be represented before this Court by appellate defense counsel appointed by The Judge Advocate General of the Army.[1]

On 10 June 1976, "pursuant to the provisions of Article . . . 70(c)(1), Uniform Code of Military Justice, . . . The Judge Advocate General . . . directed that the accused . . . be represented, . . . by the Chiefs . . . of the Defense Appellate Division and . . . such other appellate counsel as [he] may detail."

On 28 October 1976, Captain Buren R. Shields, III, filed a six-page pleading with this Court in this case, which he signed as Appellate Defense Counsel, titled Assignment of Error and Brief on Behalf of Appellant. Additionally, by means of a five-page letter addressed to The Judge Advocate General, dated 1 February 1977, Captain Shields, signing again as Appellate De-

 (1) when he is requested to do so by the accused;
 (2) when the United States is represented by counsel; or
 (3) when the Judge Advocate General has sent a case to the Court of Military Appeals.
 * * * * * *
 * * * (e) Military appellate counsel shall also perform such other functions in connection with the review of court-martial cases as the Judge Advocate General directs."
This statute is implemented by paragraph 102, Manual for Courts-Martial, United States, 1969 (Revised edition) and paragraphs D–1 and D–3, Appendix D, AR 27–10, as changed by C17, 15 Aug. 1977 and C12, 12 Dec. 1973.

fense Counsel, requested clemency for the appellant.

On 21 March 1977, this Court ordered a limited hearing in this case on an issue involving the providency of appellant's guilty plea. Cf. Smith v. Helgemoe, 23 U.S.C.M.A. 38, 48 C.M.R. 509 (1974); United States v. Zuis, 49 C.M.R. 150 (A.C.M.R. 1974). Our order directing this inquiry did not disturb the prior findings, sentence, or the convening authority's action thereon. The order merely requested a supplemental hearing on a limited issue.[2] The hearing judge was to enter his findings of fact, authenticate the supplemental record and transmit it to this Court for our final disposition under Article 66, UCMJ. No additional prerogatives were conveyed by our order.

On 21 April 1977, a hearing was held, in conformity with our order, at Fort Leavenworth, Kansas. At that hearing appellant informed the hearing judge, during his conduct of the Donohew[3] inquiry, that he desired to be represented at the hearing by his appointed appellate defense counsel, Captain Shields, who was stationed with the USALSA in Falls Church, Virginia. By a stipulation of fact the hearing judge was informed that Captain Shields had applied for, and been denied, travel orders and funds to enable him to represent his client in person at the limited hearing.

After extensive oral arguments by opposing counsel, the hearing judge denied appellant's request to be represented at the hearing by Captain Shields.[4] It is this denial which constitutes one of the bases of appellant's present prayer.

## II

That an accused is entitled to representation by an attorney at all stages of his court-martial is too basic a legal proposition to need citational support. Article 70(c), UCMJ,[5] codifies this right as it pertains to appellate proceedings.

A recent opinion from the United States Court of Military Appeals, dealing with a denial of defense counsel at trial, is United States v. Catt, 23 U.S.C.M.A. 422, 50 C.M.R. 326 (1975). In that case the trial judge refused to permit the regularly appointed defense counsel to serve, even though the appellant desired to retain his services, because the trial judge felt counsel had been disqualified by prior participation in the case on behalf of the Government. In arriving at its conclusion that the trial judge erred when he denied Catt his appointed counsel, the Court summarized the state of the military law on this subject thusly:

"In previously expressing our view as to the importance of an accused's right to the effective assistance of his appointed military defense counsel, we held:

An accused's right to be represented by defense counsel appointed in his behalf is a fundamental principle of military due process. . . . Once entered into, the relationship between the accused and his appointed military counsel may not be severed or materially altered for administrative convenience. [United States v. Murray, 20 U.S.C.M.A. 61, 62, 42 C.M.R. 253, 254 (1970)].

The establishment of a viable attorney-client relationship is the key determinative factor reiterated throughout the previous decisions of this Court involving a claimed denial of an accused's right to counsel. As a general rule, we have consistently held that the unlawful severance

---

2. This type of hearing has come into its own in the military appellate system since the decision in United States v. DuBay, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967) and has taken the name of that case since then.

3. United States v. Donohew, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969).

4. We note that the stipulation of fact referred to set out in a separate paragraph that appel-

lant had also requested Captain Shields as individual defense counsel (presumably under the provisions of Article 38(b), UCMJ and paragraph 48b, MCM, 1969 (Rev)). This request, too, was denied. The propriety of this determination has not been raised on appeal and is not under consideration pro hac vice.

5. Footnote 1, supra.

of an existing attorney-client relationship dictates reversal without regard to the amount of prejudice sustained. *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972); *United States v. Andrews, supra; United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970); *United States v. Williams*, 18 U.S.C.M.A. 518, 40 C.M.R. 230 (1969). This does not mean, however, that an attorney-client relationship, once entered into, may not be dissolved for *good cause*. For we have also recognized, without specifically testing for prejudice in those instances, that the issue may rather turn on the question of whether *good cause* is affirmatively demonstrated in the record for the severance or dissolution of the attorney-client relationship. *United States v. Timberlake*, 22 U.S.C.M.A. 117, 46 C.M.R. 117 (1973); *United States v. Massey*, 14 U.S. C.M.A. 486, 34 C.M.R. 266 (1964). Only in those situations where no attorney-client relationship was established, however, or where, once established, it was terminated by either the appellant himself or his counsel, has this Court looked to the possibility of any specific harm suffered by the appellant as a result of any claimed denial of his right to counsel. *United States v. Johnson*, 23 U.S.C.M.A. 148, 48 C.M.R. 764 (1974); *United States v. Jordan, supra; United States v. McFadden*, 19 U.S.C.M.A. 412, 42 C.M.R. 14 (1970); *United States v. Tavolilla*, 17 U.S.C.M.A. 395, 38 C.M.R. 193 (1968)." (Emphasis in original).

### III

The initial question to be resolved, and it is one to which the United States Court of Military Appeals has not spoken, is whether or not these rules concerning attorney-client relationships are for application in situations involving appellants, appellate defense counsel appointed pursuant to Article 70, UCMJ,[6] and limited hearings, *i. e.*, *DuBay*-type hearings.

The majority appears to opine that their answer would be in the affirmative if they were to decide that a *DuBay*-type hearing is an appellate, rather than a trial, function. They then proceed, however, to establish to their satisfaction that *DuBay* hearings are trial functions by relying on the United States Court of Military Appeals decision in *United States v. Flint*, 24 U.S.C.M.A. 270, 51 C.M.R. 722, 1 M.J. 428 (1976). While I agree that the *Flint* decision is dispositive of that question, I disagree with their interpretation of that opinion.

When the *Flint* case was decided at this level,[7] the defense appellate counsel was asserting as error that the Government had violated the *Burton* rule[8] by taking over 90 days to accord Flint the rehearing ordered by this Court in an earlier review. This Court rejected the defense contention that the *Burton* rule applied to rehearings on the basis that "a rehearing is part of the appellate phase of the court-martial process"[9] and went on to sustain the case.

On appeal, the United States Court of Military Appeals adopted this Court's holding insofar as that opinion exempted *DuBay*-type proceedings from the *Burton* rule, but rejected our opinion as it pertained to true rehearings. In its decision the United States Court of Military Appeals stated: "A *DuBay* proceeding, in effect, is utilized to gather additional evidence or to resolve conflicting evidence *before* determining an issue presented to the appellate tribunal. A rehearing, on the other hand, is a trial de novo, to redetermine either an accused's guilt or an appropriate sentence or both."[10] (Emphasis in the original).

6. *Id.*

7. *United States v. Flint*, 50 C.M.R. 865 (A.C. M.R. 1975).

8. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

9. *United States v. Flint, supra* at 870.

10. *United States v. Flint*, 24 U.S.C.M.A. 270, 51 C.M.R. 722, 1 M.J. 428 (1976). The Court then went on to affirm this Court's disposition of the case on the basis that the *Burton* rule was not applicable in any event because Flint's offenses occurred before its effective date.

In my view this analysis leads to the inescapable conclusion that the United States Court of Military Appeals declined to apply time restrictions to *DuBay* hearings because they are an inherent part of the appellate process.[11]

Additionally, if the limited hearing in this case was part of the trial proceedings then the transcript of the proceedings should have been subjected to the same review processes at the convening authority level as would any record of trial. I submit that such was not required by our order in this case because the hearing was strictly a fact-finding device or an arm of this Court.

Consequently, as a limited hearing must be said to be part of our review under Article 66, UCMJ, appellate defense counsel is entitled to be present at such a limited hearing in order to fulfill the statutory duties required of him by Article 70, UCMJ, to ". . . represent the accused before [12] the Court of Military Review . . ."

## IV

Having decided that an appellant is entitled to be represented at a limited hearing by his appellate defense counsel, the next matter to be determined is whether or not this appellant was entitled to representation by Captain Shields and, if so, did the Government deny that entitlement for "good cause."

Although Government counsel contend otherwise, it seems clear to me from the record that Captain Shields had established an attorney-client relationship with the appellant. Unquestionably, he was appellant's appointed appellate defense counsel.[13] While it has been asserted that such an appointment alone does not establish an attorney-client relationship,[14] Captain Shields' activities on appellant's behalf prior to the date of our decision ordering a limited hearing establish in my mind beyond the purview of a doubt, that such a relationship was in fact, and contemplation of law, created.[15]

The trial judge explained his declination to accede to appellant's request in the following terms:

". . . this court does not at the same time require that the government provide funds and ship the counsel out here. It appears to the court that, that government has made ample provision for protection of the rights of the accused by detailing qualified counsel who are in no way shown to have less expertise, and certainly in a *DuBay* hearing, than any member of the defense appellate. I think it is the matter of general knowledge that Fort Leavenworth is probably the home of the *DuBay* hearings, more held here than anywhere else, probably the four most qualified counsel in that area

11. *Cf. United States v. Johnson*, 3 M.J. 143 (C.M.A. 1977) (The United States Court of Military Appeals recognized that extensive delays at the appellate level are normal).

12. Government appellate counsel contend that the word "before" means "in the presence of" and that because limited hearings are held at sites out of the presence of this Court, Appellate Defense Counsel is not entitled to practice at such a situs. I hold that activity by counsel at a limited hearing in preparing a record on an issue specified by this Court is deemed to be practicing before this Court to the same extent as if he were preparing a brief in his office out of the presence of the Court.

13. This fact was the subject of another paragraph in the earlier referred to stipulation of fact. No contrary contention has ever been made.

14. *United States v. Nichelson*, 18 U.S.C.M.A. 69, 39 C.M.R. 69 (1968); *United States v. Brady*, 8 U.S.C.M.A. 456, 24 C.M.R. 266 (1957); *United States v. Miller*, 7 U.S.C.M.A. 23, 21 C.M.R. 149 (1956); *United States v. Adames*, 47 C.M.R. 592 (N.C.M.R. 1973); *United States v. Chierichetti*, 31 C.M.R. 524 (A.F.B.R. 1961). It is this rule which puts to rest Government counsel's argument that if appellant is entitled to Captain Shields he is also entitled to any and all other assigned Appellate Defense Counsel. Appellant is only entitled to counsel with whom he has established a *bona fide* attorney-client relationship.

15. *Compare United States v. Otterbeck*, 50 C.M.R. 7 (N.C.M.R. 1974) and *United States v. Taylor*, 3 M.J. 947 (N.C.M.R. 1977) with *United States v. Catt, supra,* and *United States v. Seaton*, 3 M.J. 812 (N.C.M.R. 1977).

around are sitting right here. The court therefore does not discharge or dismiss any of the defense appellate counsel, each accused is entitled to his counsel and that relationship will exist. The court, however, on the other hand does not order that the counsel be permitted to appear, that is the appellate counsel, the accused will have the same access to their appellate counsel that they have had since the establishment of an attorney client relationship. This court will not sever that relationship. . . ."

While the trial judge ingeniously disclaims any intention of severing the attorney-client relationship, his failure to order that counsel be permitted to personally appear to conduct the examination and cross-examination of the witnesses at the hearing effectively constituted just such a severance. I concur with his view that insofar as consultation with his client was concerned, neither Captain Shields nor the appellant were any more disadvantaged by the trial judge's ruling than is the case in our usual appellate practice. Consultations and conferences between appellate defense counsels and appellants have as a matter of course been conducted without personal confrontation.[16] In the case *sub judice*, however, we are dealing with something quite different. The right to representation by counsel would be a hollow one indeed were we to hold that an accused could be compelled to participate in an adversary proceeding without his counsel present. Our law is clearly to the contrary.[17]

The trial judge was in my view, equally in error when he relied in his refusal upon the fact that the Government had provided appellant with other competent counsel to represent his interests. The fact that the Government appoints substitute counsel has never by itself been deemed "good cause" for the severance of an attorney-client relationship.[18]

Consequently, I would hold that the judge provided no reason which constitutes good cause for depriving appellant of his right to be represented at the hearing by his regularly appointed appellate defense counsel.

In searching the record I have noted the reasons provided the appellant for the denial of his alternate request for the appointment of Captain Shields as his individual defense counsel.[19] This explanation speaks of Captain Shields' supervisory responsibilities as a Branch Chief, of eight cases for which Captain Shields was personally responsible and a general conclusionary observation to the effect that "[m]aking [Captain Shields] available would derogate from [his] duties pursuant to Article 70, UCMJ, the duty to which he has been appointed by TJAG."

While these reasons may provide a sufficient basis for determining that Captain Shields was not *reasonably available* in contemplation of Article 38(b), UCMJ, I do not find them adequate to comprise *good cause* to deny appellant the services of his appointed appellate defense counsel with whom he had established a viable attorney-client relationship.[20] Appellant's right to

---

**16.** This state of affairs has been memorialized in paragraph D–3a(3), Appendix D, AR 27–10, as changed by C12, 12 Dec. 1973.

**17.** *United States v. Nichols*, 8 U.S.C.M.A. 119, 23 C.M.R. 343 (1957); *cf. United States v. Brown*, 7 U.S.C.M.A. 251, 22 C.M.R. 41 (1956); *United States v. Hill*, 4 M.J. 33 (C.M.A. 1977); *United States v. Tavolilla*, 17 U.S.C.M.A. 395, 38 C.M.R. 193 (1968); *United States v. Koren*, 17 U.S.C.M.A. 513, 38 C.M.R. 311 (1968); *United States v. Gore*, 45 C.M.R. 544 (A.C.M.R. 1972).

**18.** *See United States v. Catt, supra; United States v. Timberlake*, 22 U.S.C.M.A. 117, 46 C.M.R. 117 (1973); *Stanten v. United States*, 21

U.S.C.M.A. 431, 45 C.M.R. 205 (1972); *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972); *United States v. Andrews*, 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972); *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970); *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964); *United States v. Tellier*, 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962).

**19.** *See* footnote 4 *supra.*

**20.** That the two standards are not necessarily the same, *see United States v. Eason, supra; United States v. Taylor*, 3 M.J. 947 (N.C.M.R. 1977).

continued representation by his appointed counsel cannot be interfered with by the appointing authority because that authority subsequently finds the continuation of the attorney-client relationship burdensome.[21] It would be fatuous to argue that the Government can dictate to defense counsel the means and methods he will employ in the defense of his client.

Finally, the United States Court of Military Appeals has held that Article 70, UCMJ, permits The Judge Advocate General to appoint as appellate defense counsel an attorney different than the trial defense counsel without regard to the prior existing attorney-client relationship.[22] Once appointed and a relationship established, however, there is nothing in Article 70, UCMJ, which permits the Government or a military judge to sever or effectively interfere with that relationship during the course of appellate review [23] for anything less than good cause.

"It follows that since in the instant case the government chose to terminate a bona fide attorney-client relationship . . . the government fell under the burden of showing *good cause* therefor after the appellant had requested his attorney. The record before us does not, in our judgment, show good cause." [24]

Once an unwarranted intervention with the right to counsel has been established reversal is mandatory without regard to prejudice.[25] In the instant situation, however, the appellant is only entitled to a "reversal" of the limited hearing.

Appellant is in my judgment entitled to another limited hearing of the type we originally ordered in this case, with Captain Shields present to represent him if he so desires. I would not dispose of this case until either a proper hearing was held or appellant waives it.

---

**21.** From the cases it appears that good cause may be said to exist to permit severance of an attorney-client relationship in the military when the attorney is dismissed, separated or retired [*Stanten v. United States, supra; United States v. Abernathy,* 1 C.M.R. 802 (A.F.B.R. 1951)]; when excused by the defendant [*United States v. Williams,* 21 U.S.C.M.A. 459, 45 C.M.R. 233 (1972)]; when accused's misconduct can be said to be responsible for the severance [*United States v. Thomas,* 45 C.M.R. 908 (N.C.M.R. 1972); *United States v. Tangonan,* 44 C.M.R. 916 (A.C.M.R. 1972)]; and at the request, expressed or implied, of the counsel [*United States v. Timberlake,* 22 U.S.C.M.A. 117, 46 C.M.R. 117 (1973); *United States v. Massey,* 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964)].

**22.** *See United States v. Patterson,* 22 U.S.C. M.A. 157, 46 C.M.R. 157 (1973); *United States v. Herrera,* 22 U.S.C.M.A. 163, 46 C.M.R. 163 (1973).

**23.** For emphasis let me state that I am not here concerned with nor am I addressing a problem involving a rehearing. *See United States v. Donaldson,* 54 C.M.R. 913, 2 M.J. 605 (N.C. M.R. 1977) and *United States v. Seaton, supra,* for two cases involving this question as it relates to rehearings.

**24.** *United States v. Owensby,* 46 C.M.R. 523, 527 (N.C.M.R. 1972).

**25.** *United States v. Catt, supra; United States v. Andrews,* 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972).