## UNITED STATES

v.

**Freddy YARBOUGH, 429 25 0295, Aviation Boatswain's Mate (Aircraft Handling) Third Class (E–4), U.S. Navy.**

**NMCM 89 0295C.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 22 Sept. 1988.

Decided 15 June 1990.

Charles R. Burke, Civilian Defense Counsel.

Lt. Nicholas Fitzgerald, JAGC, USNR, Appellate Defense Counsel.

Lt. John J. Mulrooney, II, JAGC, USNR, Appellate Government Counsel.

Before the Court En Banc.

WILLEVER, Judge:

Appellant raises three assignments of error on appeal: he asserts (1) his pleas were improvident, (2) he failed to receive the effective assistance of counsel because no objection was made to a record of nonjudicial punishment offered in aggravation during presentencing when an appeal was still pending, and (3) his sentence was inappropriately severe. We are unpersuaded and affirm, but the second assignment of error merits discussion. The issue is whether trial defense counsel's failure to object to the admissibility of a nonjudicial punishment which was on appeal at time of trial constitutes plain error under Military Rules of Evidence (Mil.R.Evid.) 103(d). We conclude it does not. Indeed, we conclude below that there is no error at all. Moreover, since it was uncontested at trial, absent plain error, error, if any, was waived. Mil.R.Evid. 103(a) and Rule for Courts–Martial (R.C.M.) 1001(b)(2), (3).

The difficulty of this issue is reflected in part by the history of the case on appeal. This opinion results from *en banc* reconsideration, pursuant to Rule 17, Courts of Military Review Rules of Practice and Procedure, from the decision of this Court dated 9 November 1989. 30 M.J. 1114. That opinion, in turn, issued from an opinion on 11 October 1989, when pursuant to Rule 19, Courts of Military Review Rules of Practice and Procedure, the Court, on its

own motion, reconsidered its decision. Upon reconsideration, the Court withdrew the opinion of 11 October 1989 and substituted the 9 November 1989 opinion in its place. We now revisit, this time *en banc.*

## BACKGROUND

The circumstances surrounding this offense occurred aboard USS SAIPAN (LHA–2). In accordance with his pleas, appellant was found guilty of a single specification of assault with a means likely to produce grievous bodily harm in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928. He was sentenced to a bad-conduct discharge, confinement for 30 days, forfeiture of $150.00 pay per month for 1 month, and reduction to pay grade E–3. The convening authority approved the sentence as adjudged, which was more lenient than the sentence limitations bargained for in the pretrial agreement.

One week prior to the offense, the victim of the assault, a second class petty officer, approached appellant, who was removing personal items from a locker in the victim's division spaces. The victim questioned appellant (also a second class petty officer at the time) as to why appellant had a locker in that particular location in the ship since it was in an area belonging to a division of which appellant was not a member. Appellant indicated that he had been given permission to use the locker,[1] and asked that they discuss the matter another time.

One week later the victim again approached appellant and inquired whether appellant had moved out of the locker. Appellant stated at trial that the victim harassed him and "got in his face" and threatened to cut the lock if appellant did not move. Appellant walked away from this confrontation. Later the same day, however, the victim approached appellant on the hanger deck and again harassed him concerning the locker. Once again appellant turned and walked away but the victim

began to follow him in an apparent attempt to continue the harangue. Appellant then spotted a steel rod about two feet long lying on the deck, picked it up, and swung it at the victim several times. The first two swings missed because the victim was able to dodge the blows. The third swing hit the victim in the upper arm between the elbow and shoulder but caused no serious injury.

A speedy trial followed. Appellant was tried by a military judge sitting as a special court-martial 13 days after the assault. During the sentencing phase of the trial, a record of appellant's nonjudicial punishment for a violation of Article 112a, UCMJ, 10 U.S.C. § 912a (use of cocaine), was offered into evidence in aggravation. Trial defense counsel raised no objection to this evidence and it was admitted by the military judge as Prosecution Exhibit 1. The nonjudicial punishment in question took place on 2 September 1988, 20 days prior to appellant's court-martial. On 9 September 1988, appellant submitted an appeal of this nonjudicial punishment and on 12 September 1988 appellant's commanding officer endorsed and forwarded the appeal with his recommendation and rationale for denial to his superior for decision. At the time of appellant's trial, the appeal, ultimately denied, had not yet been decided.

Following the Government's case in aggravation, the defense presented a strong case in extenuation and mitigation. Evidence indicated that appellant had 3 years of prior service with the U.S. Army and received an honorable discharge; that he was on his second enlistment with the Navy, had served for 8 years, received another honorable discharge, and attained the grade of second class petty officer[2]; that he was consistently evaluated in the range of 3.8–4.0; and, that he had received several letters of appreciation as well as other awards. In addition, appellant's leading petty officer testified that appellant

---

1. Later on cross-examination appellant indicated he did not have permission to use the locker. R. 40.

2. Although appellant had attained the grade of second class petty officer, he had been reduced to a petty officer third class as a result of the nonjudicial punishment for use of cocaine and appeared at trial as a third class petty officer.

was a very good performer and should be retained in the Navy. Appellant testified that he was under stress at the time of the assault, did not mean to seriously harm the victim, recognized he was wrong, and would never engage in such conduct again. In addition, appellant attempted to explain the nonjudicial punishment entered in aggravation by denying that he had ever used cocaine and stating that he believed the test was erroneous. He did not mention that his mast was on appeal. He further testified that he believed that the victim was harassing him because appellant had been to Captain's mast for drug use. Aside from the aforementioned nonjudicial punishment, appellant had no prior disciplinary record. He asked to be retained in the Navy.

Appellant alleges ineffective assistance of counsel because the trial defense counsel failed to object to Prosecution Exhibit 1, the record of appellant's nonjudicial punishment for a violation of Article 112a, UCMJ, cocaine use. Appellant asserts that since an appeal of this nonjudicial punishment was pending at the time of trial, the nonjudicial punishment was not final and thus was inadmissible. The military judge's consideration of the record of nonjudicial punishment, he asserts, was the determinative factor in the adjudging of a bad-conduct discharge, and therefore its admission in aggravation was prejudicial error, requiring sentence relief from this Court.

## ADMISSIBILITY OF PROSECUTION EXHIBIT 1

The Government, in its motion for *en banc* reconsideration, argues that a record of nonjudicial punishment is not a prior conviction, but rather a personnel record of the accused which is relevant to his prior service, and is therefore admissible under R.C.M. 1001(b)(2). The Government further contends that there was not ineffective assistance of counsel, in that the failure of defense counsel to object to this exhibit was for tactical reasons, and the relatively lenient sentence adjudged is proof of the soundness of that tactic. Alternatively, the Government argues that *even if* the evidence *could* have been ex-

cluded by an appropriate objection, plain error did not occur through its admission and in no event was the appellant prejudiced by this error, as his punishment was less than both the maximum permitted and the sentence limitation of the pretrial agreement.

Rule for Courts–Martial 1001(b)(2), Manual for Courts–Martial, United States, 1984, specifically authorizes the admission of records of nonjudicial punishment if permitted by the regulations of the Secretary concerned. Section 0133 of the Manual of the Judge Advocate General supplies the requisite Secretarial permission. For the Navy, the Court Memorandum, service record page 601–6R, is the appropriate personnel record to prove a nonjudicial punishment of the sort here involved. Unlike the records of nonjudicial punishment used in the Army or the Marine Corps, no entry is required or even authorized in a page 601–6R to indicate whether or not a nonjudicial punishment has been appealed or the outcome of any appeal.

Cases relating to records of court-martial convictions required to be final provide valuable guidance in applying the presumption of regularity and official records exception to the hearsay rule and, thus, in deciding the admissibility of Prosecution Exhibit 1. These and other cases relating specifically to records of nonjudicial punishment draw a clear distinction between records that are required to indicate finality and those that are not. The principles we glean from them are as follows:

█ *First.* If a prior action is provable by a document which is not required to address finality and, therefore, does not do so, the document, if otherwise in proper form, is *prima facie* admissible as evidence of the prior action. If there is a ground not appearing, nor required to appear, in the document upon which the admissibility of the underlying action is subject to attack, such as lack of finality, the burden is upon the defense to rebut the *prima facie* showing of admissibility represented by the document itself, in this case, Prosecution Exhibit 1. *United States v. Tiedemann,* 1 U.S.C.M.A. 595, 5 C.M.R. 23 (1952); *United*

*States v. Larney*, 2 U.S.C.M.A. 563, 10 C.M.R. 61 (1953); *United States v. Wilson*, 7 U.S.C.M.A. 656, 23 C.M.R. 120 (1957).

 *Second.* If a prior conviction is proved by a document which requires an entry as to the outcome of *required* review, and the place for such entry is blank, the result is an affirmative indication on the face of the document that the review has *not* been completed, so that the conviction is not final. *United States v. Engle*, 3 U.S.C.M.A. 41, 11 C.M.R. 41 (1953); *United States v. Pope*, 5 U.S.C.M.A. 29, 17 C.M.R. 29 (1954). Hence, the document is *prima facie* inadmissible, and the prosecution would have the burden of rebutting the inference of non-finality arising from the face of the document. The result is the same if the face of the document shows that, as a practical matter, *required* review could not have been completed in the elapsed time. *United States v. Anderson*, 2 U.S.C.M.A. 606, 10 C.M.R. 104 (1953). (The lapse of sufficient time argument from *Anderson* would, of course, not apply in the case of an optional, defense-initiated appeal, such as a nonjudicial punishment appeal.)

 *Third.* If regulations require that a record indicate *whether or not* an accused has submitted an optional, defense-initiated appeal, and the record fails to do so, no affirmative indication results either way; the record is *incomplete* and *prima facie* inadmissible, and its proponent has the burden of establishing the facts necessary for admissibility. *United States v. Mack*, 9 M.J. 300 (C.M.A.1980).

 *Fourth.* If a record indicates that an accused has submitted an optional defense-initiated appeal but fails to show an outcome of such appeal, the result should, if the presumption of regularity is rigorously applied, be an affirmative indication that the appeal is still pending. *United States v. Martin*, 4 M.J. 852 (ACMR 1978). *Cf. Engle* and *Pope.* Alternatively, the record may be regarded as incomplete, *Mack*, but, in either case, the record is *prima facie* inadmissible, and the proponent has the burden of showing that the

optional appeal was denied, withdrawn, or never actually submitted.

 Thus, we see that what is at stake is not the admissibility, *vel non*, of the underlying action, but simply who has the burdens of proof and, more importantly, of going forward, on the question of admissibility; and the rule seems to be that, if the document is *prima facie* admissible, the defense has the burdens of raising and proving collaterally any grounds for inadmissibility of the underlying action, whereas, if the document is *prima facie* inadmissible, the prosecution has the burden of proving collaterally the admissibility of the underlying action unless relieved of such burden by a failure to object amounting to waiver.

 Although the difference may seem of little practical significance, we think that it affects the situation where, as here, no objection is made. If a record is *prima facie* inadmissible, its inadmissibility should be patent to the judge and counsel, and, if the defense counsel fails to object, either the objection is deemed waived, or else a claim of plain error may be entertained. If, however, the record is *prima facie* admissible, it is not subject to a bare objection, and, in the absence of evidence introduced, or at least offered, by the defense showing the latent inadmissibility of the underlying action, *no* error, plain or otherwise, is committed in receiving the document in evidence, and no issue of waiver arises. If the defense counsel is aware of any latent matters that would render the underlying action inadmissible and suffers the document to be received without raising them, an adequacy of counsel issue may be presented, but not plain error.

 In the instant case, what we have is a Navy record of a nonjudicial punishment, which is the authorized means of proving a nonjudicial punishment, and which is not required, either by its format or by the regulations prescribing it, to reflect any appeal information whatsoever and does not do so. In accordance with the principles stated in paragraph *first*, above, and in the immediately preceding paragraph, we think that Prosecution Exhibit 1 was

*prima facie* admissible, so that, in the absence of an affirmative showing by the defense of any latent grounds for inadmissibility, *no* error was committed in receiving the document in evidence, and, *a fortiori,* no plain error.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Neither does this failure to object to the nonjudicial punishment record constitute ineffective assistance of counsel, for the appellant explained during extenuation and mitigation that he never used cocaine and felt the urinalysis was inaccurate, which, we presume, was the basis for his appeal of his nonjudicial punishment. Even though counsel might have presented evidence of nonfinality, or offered to do so, objected on the basis of such evidence, and then argued against admissibility, trial defense counsel's representation in no way fell below an objective standard of reasonableness by failure to make those arguments.

There are also some practical considerations here as well. Indeed, unlike his written mast appeal, appellant had the opportunity to refute the mast results in person before this military judge trained in the law. Then, counsel used the mast to show that appellant was under stress at the time of the assault and was being harassed because of the mast. Thus, the attack with the steel rod was described in terms of an emotional reaction to the stress of the mast rather than a calculated and vicious attack. Trial defense counsel then argued vigorously in closing argument that although appellant went to mast on 2 September for cocaine use,

> under oath he has testified as he has repeatedly told his command, that he never used cocaine.... Your Honor, we can't speculate as to the test results. But we can—what we do have before us is the testimony of the accused, under oath, that he did not use cocaine, and if in fact, the mast was a mistake.... Something he never did, based on a message from the lab.

To resolve whether trial defense counsel's failure to object to Prosecution Exhibit 1 constitutes ineffective assistance of counsel, we apply the two-step test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which there must be a showing, first, that counsel's representation was deficient to the point that it fell below an objective standard of reasonableness and, second, that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. Here, even though there existed persuasive matters which one might have relied on to argue against admissibility, we find that defense counsel's representation did not fall below an objective standard of reasonableness. Moreover, defense counsel raised the issue of mistake regarding the mast in a most effective way, appellant's sworn denial, and then argued forcefully. Lastly, neither is counsel ineffective if one looks to the sentence adjudged, since appellant received a sentence substantially below the jurisdictional maximum of the special court-martial [although not always an accurate gauge, *United States v. Dukes,* 5 M.J. 71 (C.M.A.1978) ], and we note that the sentence was also better than that of the pretrial agreement. We find no ineffective assistance of counsel.

### CONCLUSION

The mast was duly and officially recorded and admitted into evidence as Prosecution Exhibit 1. Records of nonjudicial punishment proceedings are personnel records of an accused which reflect his or her past military efficiency, conduct, and performance, and, if in proper form and complete, are *prima facie* admissible as evidence of the prior action. Counsel forcefully raised to the military judge the substantive defense which appellant had presented at mast, but the offense at bar—striking a shipmate with a steel rod—is very serious standing alone. The judge considered appellant's testimonial denial of the mast offense and weighed it before she sentenced him. Trial defense counsel did not ignore appellant's denial of cocaine use, but presented it to the military judge in the

form of the sworn testimony of the accused. It then became the judge's responsibility to weigh that testimony and arrive at a fair sentence. We are confident that she did.

We note that in this case there are irregularities regarding post-trial and appellate rights. The military judge instructed appellate and trial defense counsel to "ensure that [the appellant rights statement] is signed and returned ... for inclusion in the record" after trial. The military judge did not inquire whether the accused understood his rights before court adjourned. The better practice, so all are sure appellant understands his post-trial and appellate rights, is the on-the-record procedure approved by the Court of Military Appeals in *United States v. McIntosh*, 27 M.J. 204, 207 (C.M.A.1988). However, in this case appellant exercised his rights and we find the error harmless. *United States v. Hill*, 27 M.J. 293 (C.M.A.1988).

We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed. The findings of guilty and sentence, as approved on review below, are affirmed.

Chief Judge BYRNE, Senior Judge MCLERAN, and Judges FREYER, JONES and HILTON concur.

STRICKLAND, Judge (concurring in part and dissenting in part):

I agree with the majority's analysis concerning the admissibility of Prosecution Exhibit 1 and their conclusion that it was *prima facie* admissible in this case. However, I disagree with the finding of the majority that there was no ineffective assistance of counsel.

The majority concede that the trial defense counsel had persuasive matters to argue against the admissibility of the nonjudicial punishment for cocaine use. Nevertheless, they conclude that neither the failure to object on the basis of these matters, nor the failure even to present evidence of nonfinality, constituted representation below an objective standard of reasonableness. They do not reach the is-

sue of whether there is a reasonable probability that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I disagree with their analysis.

In order to properly analyze whether trial defense counsel's representation fell below an objective standard of reasonableness, it is necessary first to examine the significance of this evidence against appellant in aggravation. In my judgment, the severity of the sentence, and in particular, the appropriateness of the bad-conduct discharge, directly rested on the military judge's knowledge of the existence and nature of the nonjudicial punishment in question. Appellant had a total of 11 years of military service, outstanding evaluations, a recommendation from his superior petty officer that he possessed rehabilitative potential and, except for this nonjudicial punishment, a clean record. The offense of which appellant stands convicted in the instant case, while serious, was extenuated by the circumstances under which it occurred and the lack of any serious harm to the victim. In this situation, evidence of nonjudicial punishment for cocaine use by appellant, then a second class petty officer, twenty days prior to the current offense, is very significant.

How effective, then, was trial defense counsel's representation given the significance of this evidence? Since appellant pled guilty to the offense of which he was convicted, the defense counsel's primary responsibility in this case was to minimize the sentence. His entire effort should have concentrated on avoiding a punitive discharge, thereby retaining appellant in the service. He knew or should have known that the key to accomplishing this was to exclude evidence of appellant's recent nonjudicial punishment. He also knew or should have known that the nonjudicial punishment was on appeal and that the appeal had not yet been decided at time of trial. Examined in this context, I am not persuaded by the majority that the tactics employed by trial defense counsel, in attempting to refute the mast results by ap-

pellant's sworn denial, attained the level of an objective standard of reasonableness. This is particularly true given the persuasive argument against admissibility of the mast results.

While there are no cases precisely on point, there exists ample authority from which to conclude that the record of a nonjudicial punishment pending appeal is inadmissible in aggravation. The leading case on admissibility of records of nonjudicial punishment is *United States v. Mack,* 9 M.J. 300 (C.M.A.1980). *Mack* was decided on the basis of completeness of the form on which the nonjudicial punishment results were recorded. However, I am convinced that the underlying rationale of this decision was the finality of these results. In connection with Department of the Army (DA) Form 2627 which contains boxes to be checked indicating a choice of whether to appeal a nonjudicial punishment, the Court of Military Appeals stated:

> In line with our earlier analysis, a failure to check the boxes indicates that the requirements of Article 15 have not been complied with. In that event, absent independent evidence whether the accused elected to appeal, the DA Form 2627 would be inadmissible because of its incompleteness.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> If an accused checks a box indicating that he appeals, then the record of nonjudicial punishment will be incomplete unless the appropriate blocks are checked by those entrusted with taking appellate action.

*Mack,* 9 M.J. at 324.

The significance of finality of Article 15 proceedings is clear from this language. The Army Court of Military Review attached similar significance to finality in *United States v. Martin,* 4 M.J. 852 (ACMR 1978). The Court stated:

> In the absence of appellant's withdrawal of the appeal, he had a statutory right to have it considered whether or not he attacked other matters. [Footnote omitted.] Accordingly, the Article 15 action was incomplete on its face and should

not have been admitted into evidence. [Footnote omitted.]

This Court has also recognized the importance of finality of nonjudicial punishment proceedings when we stated:

> We believe a clear distinction exists between the situation in this case where mention of appeal is absent and that where the service record book entry indicates an appeal has been made but fails to indicate whether the appeal has been granted or denied. In this latter set of circumstances, this Court has correctly held that a lack of finality appears in the document itself and the entry is not admissible.

*United States v. Page,* 4 M.J. 683 (NCMR 1977).

While a completeness analysis was used to determine the admissibility of the documents, these cases illustrate the concern of appellate courts that nonjudicial punishment results not be used against an accused until any pending appeal has been adjudicated. I believe that this is the only logical interpretation one can draw from this line of cases. On this basis, trial defense counsel could, and should, have objected to the admissibility of Prosecution Exhibit 1. However, he did nothing.

Not only did he fail to object, he also failed to even bring to the attention of the military judge the fact that an appeal was pending. Even if I were to sanction the "tactics" of trial defense counsel espoused by the majority, at a minimum, it would be absolutely necessary to bring the appeal to the attention of the military judge as an adjunct to appellant's denial that he used cocaine. One could then argue that the denial was simply an extension of the position undertaken in the appeal which had not yet been decided. This would have added substantial credibility to appellant's testimony. The tactics employed here, however, ran the very real risk that the military judge believed that the nonjudicial punishment was either not appealed or was final and that appellant was lying in his sworn testimony. Thus, defense counsel's tactics risked exacerbating an already tenuous position.

I am convinced that trial defense counsel's representation was neither tactically nor legally sound. I am not able to say that merely bringing the appeal to the attention of the judge would have necessarily changed the result in this case. I can say, however, that had counsel objected to Prosecution Exhibit 1 on the basis of the existing authority cited herein and proved that the nonjudicial punishment was then on appeal, or at least offered to do so, I believe that this evidence would have been excluded. As a result, it is my judgment that there is a reasonable probability that the result would have been different, *i.e.,* that no bad-conduct discharge would have been awarded.

Having so concluded, I find that both prongs of *Strickland* have been met and that there was ineffective assistance of counsel in this case. Accordingly, I would affirm the findings and only so much of the sentence as provides for confinement for 30 days, forfeiture of $150.00 pay per month for one month and reduction to pay grade E–3.

Senior Judge ALBERTSON and Judge RUBENS concur.